Lynn Christine **OLTREMARI**, by Susan **McDANIEL**, natural mother, Plaintiff,

v.

**KANSAS SOCIAL & REHABILITATIVE SERVICE, et al., Defendants.**

Civ. A. No. 94–2145–JWL.

United States District Court, D. Kansas.

Nov. 21, 1994.

Susan McDaniel, pro se.

Barbara J. Steele, Olathe Area SRS Office, Olathe, KS, for Kansas Social & Rehabalitive Service.

Carl A. Gallagher, Office of the Atty. Gen., Kansas Judicial Center, Topeka, KS, for Johnson County Dist. Attorney's Office.

Christopher T. Fletcher, Overland Park, KS, for Ronald S. Oltremari, Colin Oltremari.

Gregory A. Dean, Overland Park, KS, for Thomas C. Owens.

Stephen M. Fletcher, pro se.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

The court referred to United States Magistrate Judge Gerald L. Rushfelt for report and recommendation eleven separate motions in the above captioned case. Those motions are as follows:

1. Motion for Dismissal of 92JC1481 (Doc. # 4) filed by plaintiff;

2. Motion for Restraining Order (Doc. # 5) filed by plaintiff;

3. Motion for Removal of C111627/92JC1481 from the District Court of Johnson County, Kansas (Doc. # 6) filed by plaintiff;

4. Motion to Dismiss (Doc. # 17) filed by defendant Thomas C. Owens;

5. Special Appearance and Motion to Dismiss Challenging Service/Process/Jurisdiction (Doc. # 19) filed by defendant Stephen M. Fletcher;

6. Special Appearance and Motion to Dismiss Challenging Jurisdiction (Doc. # 20) filed by defendant Ronald Oltremari, Sr.;

7. Special Appearance and Motion to Dismiss Challenging Jurisdiction, Sufficiency of Process, and Sufficiency of Service of Process (Doc. # 21) filed by defendant Colin Oltremari;

8. Special Appearance and Motion to Dismiss Challenging Jurisdiction, Sufficiency of Process, and Sufficiency of Service of Process (Doc. # 22) filed by defendant Ronald Oltremari, Jr.;

**1332**

9. Motion to Dismiss by Kansas Department of Social and Rehabilitative Services (SRS) (Doc. # 23);

10. Motion to Dismiss by defendant Johnson County District Attorney's Office (Doc. # 27);

11. Motion to Oppose Dismissal (Doc. # 31) filed by plaintiff.

On October 26, 1994, Judge Rushfelt submitted his Report and Recommendation to the district court. Pursuant to the provisions of Federal Rule of Civil Procedure 72(b), each party had the right within ten days after being served with a copy of the recommended disposition to serve and file specific, written objections to the proposed findings and recommendations. No such objections were filed by any party to the case.

The court has carefully reviewed Judge Rushfelt's extremely thorough report and recommendation, which runs to a total of 77 pages. Judge Rushfelt was thoughtful and detailed in his analysis. He relied on well established legal principles and applied them to this case with care. The court is aware of no reason why the report and recommendation should not be adopted in its entirety.

 Although not called upon to do so by any party, the court has, nonetheless, specifically reviewed *de novo* the argument that the court should decline jurisdiction of this case under the abstention doctrine announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The court is persuaded that it should, in fact, so abstain on that basis in the interests of federalism. Moreover, the court is also persuaded upon its independent review that the complaint should be dismissed, *sua sponte*, on the basis of *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir.1986) ("[U]nder Fed.R.Civ.P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney."). Because Susan McDaniel is not a lawyer, she may not represent her minor child without an attorney because the right to counsel belongs to the child and the parent is powerless to waive it. *Osei–Afriyie v. Medical College*, 937 F.2d 876, 883 (3rd Cir.1991).

For the foregoing reasons, then, the court ORDERS as follows:

1. The court overrules the motion for dismissal of 92JC1481 (Doc. # 4), the motion for restraining order (Doc. # 5), and the motion for removal of C111627/92JC1481 from the District Court of Johnson County, Kansas (Doc. # 6).

2. The court deems the motion to oppose dismissal (Doc. # 31) to be a response by plaintiff to the defense motions and finds it to be moot as a motion.

3. The court sustains those parts of the motions to dismiss (Docs. 17, 19 through 23 and 27) which are based on *Younger* abstention.

4. The court finds the balance of the motions to be moot.

5. In the alternative, were a court of appeals to determine that this court erred in abstaining under *Younger*, it orders the case to be dismissed, *sua sponte*, under *Meeker v. Kercher* and, alternatively, in the event that a court of appeals should determine the case was erroneously dismissed on that basis, it orders that the motions to dismiss which are documents No. 27, 21 and 22 are granted and, except as otherwise indicated, the motions to dismiss which are documents No. 17, 19, 20 and 23 are overruled.

**IT IS SO ORDERED.**

### *REPORT AND RECOMMENDATION*

RUSHFELT, United States Magistrate Judge.

By various orders, the District Judge referred to the Magistrate Judge the following motions for report and recommendation:

1. Motion For Dismissal of 92JC1481 (doc. 4), filed by plaintiff;

2. Motion For Restraining Order (doc. 5), filed by plaintiff;

3. Motion For Removal of C111627/92JC1481 From The District Court of Johnson County, Kansas (doc. 6), filed by plaintiff;

4. Motion To Dismiss (doc. 17), filed by defendant Thomas C. Owens;

5. Special Appearance and Motion To Dismiss Challenging Service/Process/Jurisdiction (doc. 19), filed by defendant Stephen M. Fletcher;

6. Special Appearance and Motion To Dismiss Challenging Jurisdiction (doc. 20), filed by defendant Ronald Oltremari, Sr.;

7. Special Appearance and Motion To Dismiss Challenging Jurisdiction, Sufficiency of Process, and Sufficiency of Service of Process (doc. 21), filed by defendant Colin Oltremari;

8. Special Appearance and Motion To Dismiss Challenging Jurisdiction, Sufficiency of Process, and Sufficiency of Service of Process (doc. 22), filed by defendant Ronald Oltremari, Jr.;

9. Motion To Dismiss By Kansas Department of Social and Rehabilitative Services (SRS) (doc. 23);

10. Motion To Dismiss By Defendant Johnson County District Attorney's Office (doc. 27); and

11. Motion To Oppose Dismissal (doc. 31), filed by plaintiff.[1]

(See Orders of April 22, May 10, 12, 25, and 26, 1994.) The Magistrate Judge respectfully submits the following report and recommendation:

As a preliminary matter the court should determine whether and to what extent it has subject matter jurisdiction. Defendants raise that issue by their respective motions. "Federal courts are courts of limited jurisdiction. This court's jurisdiction is established by the Constitution and acts of Congress. The statutory jurisdiction of this court is set forth in 28 U.S.C. § 1330, *et seq.*" *Holloway v. Ohio,* No. 93–4139–SAC, 1993 WL 302240, at *1 (D.Kan. July 27, 1993).

"Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3). Section 1915(d) of Title 28 of the United States Code, furthermore, "authorizes federal courts to dismiss a *pro se* claim 'if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.' A complaint 'is frivolous where it lacks an arguable basis either in law or in fact.' " *Holloway,* 1993 WL 302240, at *2 n. 1. A complaint is frivolous within the meaning of § 1915(d), if its subject matter is outside the jurisdiction of the court. *See id.*

"A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." "If the parties do not raise the question of lack of jurisdiction, it is the duty of the federal court to determine the matter *sua sponte.* Therefore, lack of jurisdiction cannot be waived and jurisdiction cannot be conferred upon a federal court by consent, inaction or stipulation."

*Tuck v. United Servs. Automobile Ass'n,* 859 F.2d 842, 844 (10th Cir.1988) (citations omitted), *cert. denied,* 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 839 (1989). "Since federal courts are courts of limited jurisdiction, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." *Penteco Corp. Ltd. Partnership—1985A v. Union Gas Sys., Inc.,* 929 F.2d 1519, 1521 (10th Cir.1991) (citation omitted).

Plaintiff has not stated a basis for federal jurisdiction in her complaint. That fact alone, however, does not determine the issue. Plaintiff proceeds *pro se.* Courts entertain reasonable leniency towards such parties. "The Supreme Court requires that *pro se* complaints be accorded more leniency when reviewed in light of a motion to dismiss." *Powell v. Kelley,* 782 F.2d 1043, 1985 WL 14055, at *2 (6th Cir.1985) (Text on WESTLAW) (citing *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *see also, Stillman v. Division of Hous. & Community Renewal,* No. 88 CIV. 4135 (JFK), 1990 WL 52259, at *1 (S.D.N.Y. Apr. 18, 1990) (citing *Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 175–77, 66 L.Ed.2d 163 (1980); *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96 (1972)). "This requisite, coupled with the policy of liberal con-

---

1. The Motion To Oppose Dismissal (doc. 31) merely responds to the many motions to dismiss. It does not constitute a motion, notwithstanding its title.

struction of the pleadings embodied in Fed. R.Civ.P. 8(f), demands that the Court look beyond the summary statement of the untutored plaintiff and examine whether the Court in fact has subject matter jurisdiction over the claim." *Sears v. Equal Employment Opportunity Comm'n,* No. CIV.A.86–2470, 1987 WL 15547, at *1 (D.D.C. Jan. 14, 1987); *see also, Aviles v. Lutz,* 887 F.2d 1046, 1048 (10th Cir.1989) (construing plaintiff's claims as arising under the Federal Tort Claims Act, although his complaint did not state a basis for jurisdiction). "[F]ailure to set forth clear and particularized jurisdictional allegations is not fatal to [a *pro se* party's] case." *Sears,* 1987 WL 15547, at *1. Courts liberally construe pleadings of *pro se* litigants even when jurisdiction may be based upon a federal question. *See Tripati v. United States Immigration & Naturalization Serv.,* 784 F.2d 345, 346 n. 1 (10th Cir.1986) (citation omitted), *cert. denied,* 484 U.S. 1028, 108 S.Ct. 755, 98 L.Ed.2d 767 (1988).

Defendant SRS has suggested that the court construe the action of plaintiff as a petition for writ of habeas corpus and deny jurisdiction. Section 2254(a) of Title 28 of the United States Code provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." On first glance, this section may appear to confer jurisdiction over claims of alleged constitutional violations of a child in any type of custody. The Supreme Court has held, however, that "§ 2254 does not confer federal-court jurisdiction" in all cases of custody. *Lehman v. Lycoming County Children's Servs. Agency,* 458 U.S. 502, 516, 102 S.Ct. 3231, 3240, 73 L.Ed.2d 928 (1982). Custody of a child by foster or adoptive parents or by the state "is not the type of custody that traditionally has been challenged through federal habeas.... [E]xtending the federal writ to challenges to state child-custody decisions—challenges based on alleged constitutional defects collateral to the actual custody decision—would be an unprecedented expansion of the jurisdiction of the lower federal courts." *Id.* at 511–12, 102 S.Ct. at 3237–38.

Diversity jurisdiction under 28 U.S.C. § 1332(a)(1) also appears to be lacking. Section 1332(a)(1) grants federal district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between ... citizens of different States." [2] "For purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)(1), state citizenship is the equivalent of domicile. To effect a change in domicile, two things are indispensable: First, residence in a new domicile, and second, the intention to remain there indefinitely." *Crowley v. Glaze,* 710 F.2d 676, 678 (10th Cir.1983).

"Domicile" is not necessarily synonymous with "residence," and one can reside in one place but be domiciled in another. For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there. One acquires a "domicile of origin" at birth, and that domicile continues until a new one (a "domicile of choice") is acquired. Since most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents.

*Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989) (citations omitted). Domicile, for purposes of diversity jurisdiction, is determined at the moment of filing.

When an adult brings an action on behalf of his or her minor child, the domiciles of both relate to determining diversity jurisdiction. *See Dunlap v. Buchanan,* 741 F.2d 165, 167 (8th Cir.1984) (citation omitted). The domicile of a divorced parent who is granted custody of a child generally determines the domicile of that child. *See Clyde v. Ludwig Hardware Store, Inc.,* 815 F.Supp. 688, 690 (S.D.N.Y.1993) (citations omitted). In cases of joint custody "it is best to resolve domicile in favor of that state in which the infant primarily resides, at least where such

---

**2.** The other bases for diversity jurisdiction, 28 U.S.C. §§ 1332(a)(2)–(4), do not appear applicable. No party is a citizen or subject of a foreign state.

residence is with one of the two parents." *Id.* at 691. This comports with the underlying purpose of diversity jurisdiction to protect nonresident litigants from state bias. *See id.*

The record does not clearly reflect the domiciles of plaintiff or her mother, Susan McDaniel. The complaint shows only that they were citizens of Kansas when McDaniel divorced defendant Ronald Oltremari, Sr.; that all the parties resided in Kansas when plaintiff filed the present action, and that for a few intervening years plaintiff and her mother lived in Florida. There is no suggestion, however, that plaintiff or her mother do not intend to remain in Kansas. Nothing suggests that their domiciles are somewhere else. The party bringing suit in federal court bears the burden to demonstrate that the court has jurisdiction. In this instance diversity appears to be lacking. Plaintiff has not shown the citizenship of the parties to be diverse. "[D]iversity jurisdiction attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation." *Depex Reina 9 Partnership v. Texas Int'l Petroleum Corp.*, 897 F.2d 461, 463 (10th Cir.1990). Lacking complete diversity, the court cannot find that it has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

That diversity may be lacking does not resolve the question of jurisdiction. "The district courts shall [also] have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1993). "[T]he statutory phrase 'arising under the Constitution, laws, or treaties of the United States' has resisted all attempts to frame a single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts." *Franchise Tax Bd. v. Construction Laborers Vacation Trust For S. Cal.*, 463 U.S. 1, 8, 103 S.Ct. 2841, 2845, 77 L.Ed.2d 420 (1983). The phrase "arising under" means generally that " '[a] suit arises under the law that creates the cause of action.' " *Id.* at 8–9, 103 S.Ct. at 2845–46 (quoting *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916)). This common formulation "serves more as a rule of inclusion than exclusion." *Zibell v. Brull,* No. 93–4057–SAC, 1993 WL 192831, at *3 (D.Kan. May 20, 1993). " '[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.' " *Franchise Tax Bd.*, 463 U.S. at 10–11, 103 S.Ct. at 2846–47 (quoting *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936)). "[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986).

Plaintiff filed her Civil Complaint in this case by using a standardized form available to *pro se* parties. She has attached to the complaint a document, entitled "Cause of Action." It includes many allegations and conclusions which appear irrelevant to any claim over which this court could assert jurisdiction. Much of it describes the conduct and failures of nonparties. (See Civil Compl., doc. 3, and Cause of Action attached thereto.) In a light most favorable to plaintiff, the complaint and attachment set forth the following material allegations:

Plaintiff claims that defendants Kansas Department of Social and Rehabilitative Services (SRS) and the Johnson County District Attorney's Office have denied them constitutional due process. She further claims that defendant Thomas Owens (Owens), her guardian *ad litem* in state court proceedings, violated her rights of due process. She alleges that SRS financially and emotionally harassed her and her mother. She also asserts a claim of double jeopardy against defendant Owens and a claim for violation of her constitutional right against cruel and unusual punishment. (Civil Compl., at ¶ II.) She alleges that these wrongs continue to occur. (Civil Compl., at ¶ IV.) For relief she seeks to remove to this court the litigation pending in state court when she filed this action, appoint legal defense, or otherwise authorize litigation. (Civil Compl., at ¶ III.) She also seeks actual and punitive

damages in the amount of $500,000 for alleged harassment. (Civil Compl., at ¶¶ V–VI.) All the claims stem from a battle between her parents for her custody.

Plaintiff also seeks declarations as to the following issues: (1) whether a minor child has a fundamental right to her own legal counsel when the child asserts inalienable constitutional and legal rights; (2) whether defendants Owens, as guardian *ad litem*, and SRS "have acted as 'potted plants growing their own flowers' or as 'an arm of a ruling' while failing to ensure fair hearing and enforcement of said rights;" (3) whether a minor child is guaranteed access to the courts under the procedural and substantive due process clauses of the Fourteenth Amendment of the United States Constitution; (4) whether a minor child has a constitutional right to petition the court in her own name for the right to establish her jurisdiction, legal custody, and her best interests, pursuant to Section 10 of the Kansas Bill of Rights and the Fifth, Eighth, and Ninth Amendments to the United States Constitution; (5) whether Florida is the most convenient and appropriate forum to decide her best interests, considering her significant contacts with Florida "and the wealth of information available to the Court;" and (6) whether the opinions and influence of defendants SRS and Owens are in her best interests, in view of their alleged failure to fulfill their continuing legal obligations to her, their continued assertions of position contrary to her legal rights, tantamount to cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution, and their continued threats to her, keeping her from enjoying a normal childhood with a permanent, stable, and healthy environment and thus violating the Fourteenth Amendment of the United States Constitution. Plaintiff also appears to assert claims of gender discrimination against defendants SRS, guardian Owens, opposing counsel Stephen M. Fletcher (Fletcher), and her father Ronald Oltremari, Sr. She alleges that defendants Owens and Fletcher have conspired to cover the dysfunctional handling of her by concocting a "custody battle." She further alleges that Owens and Fletcher conspired to influence a state court judge. (See Cause of Action, at 2.)

Plaintiff has alleged constitutional violations within the jurisdiction of this court, pursuant to 28 U.S.C. § 1331. When the complaint, as here, seeks recovery directly under the Constitution, a federal court should entertain the suit; unless the Constitutional claim clearly appears immaterial and made solely for obtaining jurisdiction or if it is wholly insubstantial and frivolous. *Coppedge v. Marsh*, 532 F.Supp. 423, 425–26 (D.Kan.1982) (citing *Bell v. Hood*, 327 U.S. 678, 681–83, 66 S.Ct. 773, 775–77, 90 L.Ed. 939 (1945)). "The reason for this is that the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy." *Id.* (quoting *Bell*, 327 U.S. at 681–82, 66 S.Ct. at 775–76). The claimed violations of due process in this case do not clearly appear immaterial or solely made to bestow jurisdiction upon this court. Nor do they appear wholly insubstantial and frivolous. Section 1331, therefore, provides a basis for jurisdiction over those claims. *See Caldwell v. Miller*, 790 F.2d 589, 595, 600–05 (7th Cir.1986).

The claims of double jeopardy and cruel and unusual punishment, nonetheless, appear wholly insubstantial and frivolous. The prohibition of cruel and unusual punishment of the Eighth Amendment requires that punishment be compatible "with 'the evolving standards of decency that mark the progress of a maturing society.'" *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). Plaintiff apparently contends that the termination of the parental rights of McDaniel is cruel and unusual punishment to plaintiff or her mother. She cites no authority for this proposition. The court should find the claim of cruel and unusual punishment frivolous and dismiss it.[3]

---

3. The state proceedings have now nearly completed. The state court granted custody of plaintiff Lynn Oltremari to her mother Susan McDaniel. (See Mem. Decision, attached to Supple-ment To Kansas Department of Social and Rehabilitative Services Mot. To Dismiss, doc. 46, hereinafter simply referred to as Mem. Decision.) Thus, the claim of cruel and unusual punishment

The court should likewise dismiss the claim of double jeopardy. The protections afforded by the double-jeopardy provision in the Fifth Amendment to the United States Constitution apply to proceedings that are "essentially criminal." *Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975). They protect a person against more than one criminal trial and punishment for the same offense. *See One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972). The Supreme Court

> has often stated that the question whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction. [Its] inquiry in this regard has traditionally proceeded on two levels. First, [it] ha[s] set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penalty, [it] ha[s] inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention. In regard to this latter inquiry, [it] ha[s] noted that "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground."

*United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 2641–42, 65 L.Ed.2d 742 (1980) (citations omitted).

Plaintiff here suggests that her mother Susan McDaniel is subjected to double jeopardy by virtue of proceedings in state court to determine the custody and best interests of plaintiff. A criminal action in state court resulted in a conviction and punishment of Ms. McDaniel for taking plaintiff out of Kansas in violation K.S.A. 21–3422a. Plaintiff contends that her mother, as a convicted felon, is no longer a candidate for custody. She cites no authority for this proposition.

Since this action was filed, however, the state court has granted custody of plaintiff to her mother. (See Mem. Decision, at 13.) This moots the issue of double jeopardy. Determination of child custody, moreover, constitutes a civil proceeding. The Kansas statutes controlling the issue are civil in character, not punitive. Termination of parental rights does not constitute punishment for a crime. Plaintiff, furthermore, would appear to have no standing to assert a double jeopardy claim for her mother. Such a claim, even if meritorious, would be her mother's alone. The court should dismiss the claim of double jeopardy as frivolous on its face.

The claims of plaintiff also invite consideration of jurisdiction under 28 U.S.C. § 1343(a). It provides:

> The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
>
> (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;[4]
>
> (2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;
>
> (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;[5]
>
> (4) To recover damages or to secure equitable or other relief under any Act of

---

appears to be moot, even if the court were to find it meritorious.

**4.** Section 1985 of Title 42 of the United States Code governs the following conspiracies to interfere with civil rights: (1) preventing an officer from performing duties; (2) obstructing justice or intimidating a party, witness, or juror; and (3) depriving persons of rights or privileges.

**5.** Section 1983 of Title 42 of the United States Code governs civil actions for the deprivation of civil rights. Section 1343(a)(3) is the jurisdictional counterpart to § 1983. 13B Charles A. Wright et al., *Federal Practice and Procedure* § 3573 (1984) (hereinafter Wright & Miller).

Congress providing for the protection of civil rights, including the right to vote. (footnotes added).

Section 1343(a)(1) appears to bestow jurisdiction over some of the claims for damages. Plaintiff suggests that defendants SRS, Owens, Fletcher, and Ronald Oltremari, Sr. conspired to deprive her of constitutional rights and privileges. In conjunction with § 1343(a)(1), 42 U.S.C. § 1985(3) on its face makes such conduct actionable in federal court. Section 1985(3) provides in pertinent part:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The Supreme Court has interpreted this statute:

> [A]ll indicators—text, companion provisions, and legislative history—point unwaveringly to § 1985(3)'s coverage of private conspiracies. That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others.... The language requiring intent to deprive of *equal* protec-

tion, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

*Griffin v. Breckenridge,* 403 U.S. 88, 101, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (footnote omitted).

To engage federal jurisdiction, therefore, the alleged conspiracy must have some racial or other class-based, invidiously discriminatory animus for its motivation. Plaintiff has not asserted racial discrimination. Liberally construed, however, the complaint alleges that defendants SRS, Owens, Fletcher, and Ronald Oltremari, Sr. conspired to discriminatorily deny constitutional rights to plaintiff because of her gender. At least one decision in the District of Kansas has "conclude[d] that a conspiracy motivated by gender-based animus is actionable under § 1985(3)."[6] *Women's Health Care Servs., P.A. v. Operation Rescue–National,* 773 F.Supp. 258, 264 (D.Kan.1991), *rev'd on other grounds,* 24 F.3d 107 (10th Cir.1994).

Granting reasonable liberality to the *pro se* complaint, the court should construe it to include a claim for damages for discriminatorily harassing plaintiff and violating her constitutional rights because of her gender. The court would have jurisdiction over this claim, pursuant to 28 U.S.C. § 1343(a)(1) or (3).

Although the complaint appears to assert claims for damages and other relief consistent with 28 U.S.C. §§ 1331 and 1343(a) by alleging violations of constitutional and statutory rights, it also challenges an anticipated termination of parental rights and adverse determination of custody over plaintiff. Federal courts have varied in applying a jurisdictional exception to federal and constitutional claims involving intra-family disputes, such as underlie this case.[7] *See Ingram v. Hayes,*

---

**6.** The Supreme Court has declined to address the issue. *See Bray v. Alexandria Women's Health Clinic,* —— U.S. ——, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993).

**7.** The courts have carved out a domestic relations exception to diversity jurisdiction. *Vaughan v. Smithson,* 883 F.2d 63, 64 (10th Cir.1989). "[T]he domestic relations exception

866 F.2d 368, 370–72 (11th Cir.1988) (discussing the different approaches). Neither the Tenth Circuit Court of Appeals nor the District of Kansas appears to have ruled on such an exception. The Supreme Court has not considered it. Discussing a similar exception to diversity jurisdiction, the Tenth Circuit Court stated:

> The contemporary rationale for the domestic relations exception is premised on policy considerations. Courts have reasoned that: (1) the states have a strong interest in domestic relations matters and have developed an expertise in settling family disputes; (2) such disputes often require ongoing supervision, a task for which the federal courts are not suited; (3) federal adjudication of such disputes increases the chances of incompatible or duplicative federal and state court decrees; and (4) such cases serve no particular federal interest, while they crowd the federal court docket.

*Vaughan,* 883 F.2d at 65.

The Eleventh Circuit "has suggested that the domestic relations exception only applies to diversity jurisdiction." *Ingram,* 866 F.2d at 370 (citing *McDougald v. Jenson,* 786 F.2d 1465 (11th Cir.), *cert. denied,* 479 U.S. 860, 107 S.Ct. 207, 93 L.Ed.2d 137 (1986)).[8] The Fifth Circuit accords. *See Franks v. Smith,* 717 F.2d 183 (5th Cir.1983). "The mere fact that a claimed violation of constitutional rights arises in a domestic relations context does not bar review of those constitutional issues." *Id.* at 185. The court should not dismiss such claims for lack of subject matter jurisdiction, "[u]nless it is determined that an asserted constitutional violation has been forwarded solely for the purpose of obtaining federal jurisdiction or is wholly insubstantial and frivolous, or unless it is determined that such an asserted violation is clearly immaterial to the case." *Id.* The Third Circuit has also noted "that the domestic relations exception *per se* applies only to actions in diversi-

ty." *Flood v. Braaten,* 727 F.2d 303, 307 (1984). The Sixth Circuit has "reject[ed] the rationale that [a] district court [cannot] determine domestic relations issues when they arise in the context of a question properly within the jurisdiction of the federal courts." *Huff v. Metropolitan Life Ins. Co.,* 675 F.2d 119, 122 (1982). The Sixth Circuit has warned, however, that "when brought under the guise of a federal question action, a suit whose substance is domestic relations generally will not be entertained in a federal court." *Firestone v. Cleveland Trust Co.,* 654 F.2d 1212, 1215 (1981).

The First Circuit has refused to apply a domestic relations exception in federal question cases which do not probe the domestic affairs of the parties or otherwise implicate the prudential concerns behind the exception. *Fernos–Lopez v. Figarella Lopez,* 929 F.2d 20, 22–23 (1st Cir.), *cert. denied,* 502 U.S. 886, 112 S.Ct. 244, 116 L.Ed.2d 199 (1991). The Ninth Circuit has noted in *dictum* that "federal courts decline to hear disputes which would deeply involve them in adjudicating domestic matters," even when the case presents a federal question. *Thompson v. Thompson,* 798 F.2d 1547, 1558 (9th Cir. 1986) (per curiam), *aff'd,* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) (the Supreme Court did not discuss the domestic relations exception). The Ninth Circuit, moreover, applies the exception when a state court action concerning similar issues is pending. *Peterson v. Babbitt,* 708 F.2d 465, 466 (9th Cir.1983). It has held that plaintiffs are at liberty to present whatever constitutional claims they may have to the state court. *Id.* It has further held that "[a] federal court has jurisdiction over cases when domestic relations issues are implicated only tangentially, but may decline to exercise that jurisdiction where the issues involved are closely related to issues within the domestic relations exception and considerations of comity and policy counsel against federal

---

encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards,* 504 U.S. 689, ——, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992). Thus, "federal courts do not have diversity jurisdiction to grant a divorce or annulment, determine support payments, or award custody of a child." *Vaughan,* 883 F.2d at 64 (citations omitted).

**8.** The Eleventh Circuit also recognizes that the exception has been applied to "federal question jurisdiction which would require adjudication of domestic affairs." *Carver v. Carver,* 954 F.2d 1573, 1578 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 496, 121 L.Ed.2d 434 (1992).

court intervention." *Fern v. Turman*, 736 F.2d 1367, 1370 (9th Cir.1984) (citations omitted).

The Eighth Circuit has held that "[w]here a constitutional issue arises out of a custody dispute, and the initial determination involves a reexamination of the custody arrangement, the proper course is to dismiss the case and remand to the state court." *Bergstrom v. Bergstrom*, 623 F.2d 517, 520 (8th Cir.1980). The Second Circuit has concluded that federal courts may hear purely constitutional questions that arise from domestic relations disputes, but must apply the domestic relations exception and abstain from jurisdiction, when the district court "could become enmeshed in factual disputes." *Hernstadt v. Hernstadt*, 373 F.2d 316, 318 (2d Cir.1967).

In this instance it does not matter whether a domestic relations exception to federal question jurisdiction exists. The exception, as defined in the context of diversity jurisdiction by the Supreme Court in *Ankenbrandt*, appears inapplicable here. By her complaint plaintiff does not specifically ask for a divorce, the imposition of alimony, or a determination of custody. Although her claims may arise from a custody dispute, the court need not determine custody to address the claims.

> The proper inquiry focuses on the type of determination the federal court must make in order to resolve the claim. If the federal court is called upon to decide those issues regularly decided in state court domestic relations actions such as divorce, alimony, child custody, or the support obligations of a spouse or parent, then the domestic relations exception is applicable.

*Vaughan*, 883 F.2d at 65. This court appears to have subject matter jurisdiction, therefore, over at least some of the claims for damages and violations of due process and gender discrimination, pursuant to 28 U.S.C. §§ 1331 and 1343(a). Plaintiff has not "clothed her complaint in the garb of a civil rights action ... [when] her claim [actually] boils down to a demand for custody of [a] child." *See Sutter v. Pitts*, 639 F.2d 842, 844

(1st Cir.1981). Nor does it appear that the relief sought is simply an appellate review of a state court judgment.[9]

Pursuant to 28 U.S.C. § 1367(a) the court also appears to have supplemental jurisdiction over some of the other claims of plaintiff. Section 1367(a) provides in pertinent part that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Congress enacted this section "to avoid piecemeal litigation." *Roe v. Little Co. of Mary Hosp.*, 800 F.Supp. 620, 623 (N.D.Ill. 1992). To invoke supplemental jurisdiction, plaintiff need only demonstrate that the claims not within the original jurisdiction of the court form part of the "same case or controversy under Article III" as their federal claims. *Fasco Indus., Inc. v. Mack*, 843 F.Supp. 1252, 1256 (N.D.Ill.1994). "In the process of making this determination, the court must define this 'same case or controversy' concept as it must be understood in the context of the supplemental jurisdictional statute." *Roe*, 800 F.Supp. at 623.

Section 1367(a) provides little guidance as to what constitutes the same case or controversy under Article III, "[b]ut the legislative history of the Federal Courts Study Committee Implementation Act suggests that, at the very least, the section codifies tests developed by the Supreme Court in *United Mine Workers v. Gibbs*[, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ] and the Federal Courts Study Committee." *Rolex Watch, U.S.A., Inc. v. Bulova Watch Co.*, 820 F.Supp. 60, 63 (E.D.N.Y.1993). *Gibbs* suggests that "[t]he state and federal claims must derive from a common nucleus of operative fact ... [and] if ... a plaintiff's claims

---

**9.** "It is well settled that federal district courts are without authority to review state court judgments where the relief sought is in the nature of appel-

late review." *Anderson v. Colorado*, 793 F.2d 262, 263 (10th Cir.1986).

are such that he [or she] would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138. "This standard was designed to further judicial economy and promote fairness to the litigants. In determining whether the claims 'derive from a common nucleus of operative fact' the Court compared the factual findings required under the respective state and federal laws." *Goger v. Merchants Bank (In re Feifer Indus.)*, 141 B.R. 450, 453 (Bankr.N.D.Ga.1991).

"The Federal Courts Study Committee [(the Committee)] describes supplemental jurisdiction as the power to address state claims arising from the same 'transaction or occurrence' as a federal claim." *Rolex Watch, U.S.A., Inc.*, 820 F.Supp. at 63–64. The Committee recommended "that Congress expressly authorize federal courts to hear any claim arising out of the same 'transaction or occurrence' as a claim within federal jurisdiction, including claims, within federal question jurisdiction, that require the joinder of additional parties, namely, defendants against whom that plaintiff has a closely related state claim." *Guzman v. Oxnard Lemon Assocs., Ltd.*, No. CV 91–6957 KN (EX), 1992 WL 510094, at *8 (C.D.Cal. Aug. 28, 1992) (quoting Report of Federal Courts Study Committee at 47–48 (1990)). The report of the Committee suggests that the primary intent behind supplemental jurisdiction was "to allow a plaintiff with a federal claim to bring a related state claim against an additional defendant." *Id.* When "there is a single wrong alleged by a plaintiff arising out of an interlocked series of transactions and giving rise to the relief that is sought, the Court should find that the claims against all of the defendants form part of the 'same case or controversy.'" *Roe*, 800 F.Supp. at 624. Under such circumstances "the claims against all of the defendants necessarily satisfy 'the case of [sic] controversy' requirement." *Fasco Indus., Inc.*, 843 F.Supp. at 1257. Claims against multiple defendants which form part of single injury "fall comfortably within the scope of this court's supplemental jurisdiction." *Doe v. Abbott Labs.*, No. 93 C 0500, 1993 WL 278458, at *2 (N.D.Ill. July 20, 1993).

All the claims of plaintiff Lynn Oltremari arise from a dispute over her legal custody. Each of them requires inquiry into the same or similar underlying facts. They derive, therefore, from a common nucleus of operative fact. Based upon an ongoing custody dispute, they also appear to arise from the same transaction or occurrence within the meaning of the cases cited above. Although plaintiff alleges more than a single wrong, her claims arise from a continuing course of alleged misconduct in two related proceedings in state court. They appear, therefore, to involve the same case or controversy. The court should find that it has subject matter jurisdiction over the claims here asserted against defendants SRS, Owens, Fletcher, Ronald Oltremari, Sr., and Johnson County District Attorney's Office. The complaint and its attached "Cause of Action" state no claims, however, against defendants Colin Oltremari or Ronald Oltremari, Jr. The court should dismiss the complaint as to these two defendants. *See McCrum v. Elkhart County Dep't of Public Welfare*, 806 F.Supp. 203, 208 (N.D.Ind.1992). Subject matter jurisdiction would not exist for nonexistent claims. The action against these two defendants appears frivolous.

The individual motions invite further consideration upon their respective merits. Defendant Ronald Oltremari, Sr. moves for dismissal only for lack of subject matter jurisdiction. Plaintiff, however, alleges that he conspired with a state agency and her guardian *ad litem* to discriminate against her because of her gender. She seeks damages for such harassment. The court has jurisdiction over this damage claim under 28 U.S.C. § 1343(a). Accordingly, it should overrule the Special Appearance and Motion To Dismiss Challenging Jurisdiction (doc. 20) of defendant Ronald Oltremari, Sr.

Plaintiff herself has brought three motions: a Motion For Dismissal of 92JC1481 (doc. 4), a Motion For Restraining Order (doc. 5), and a Motion For Removal of C111627/92JC1481 From The District Court of Johnson County, Kansas (doc. 6). No one has opposed them. All three motions appear meritless on their

face. The court should overrule them for the following reasons:

The Motion For Dismissal of 92JC1481 (doc. 4) asks this court to dismiss for lack of prosecution a case pending in the District Court of Johnson County, Kansas when plaintiff filed her complaint. The motion charges that "[t]he Child in need of care filed September 2, 1992 has been incorporated into C111627 [ (another case pending in District Court of Johnson County, Kansas when plaintiff filed suit here) ]," that "[t]he child has not been allowed to testify," and that the prolonged action leaves the child unstable and homeless. Despite these contentions, plaintiff cites no authority for this court to arrogate jurisdiction and dismiss a case in state court. On August 5, 1994, moreover, the District Court of Johnson County, Kansas, dismissed case 92JC1481 and otherwise resolved the companion case C111627. (See Mem. Decision, attached to Supplement To Kansas Department of Social and Rehabilitative Services Mot. To Dismiss, doc. 46, at 13–15, hereinafter simply referred to as Mem. Decision.) For the foregoing reasons, the court should deem the issue moot and otherwise overrule the motion.

By the Motion For Removal of C111627/92JC1481 From The District Court of Johnson County, Kansas (doc. 6), plaintiff seeks to remove the two cases from state court to this court. They respectively bear the captions "Susan M. Oltremari, plaintiff v. Ronald S. Oltremari, defendant" and "In the Interest of Lynn Christine Oltremari, A Child Under 18 Years of Age." Plaintiff here contends that she has been denied constitutional due process, that prejudice has pervaded the state-court proceedings, that defendant SRS has shown contempt for state-court orders and has repressed her, that inappropriate discussion of *in camera* conferences have occurred, and that the state-court actions constitute double jeopardy and cruel and unusual punishment.

"An action initiated in state court may be removed to the appropriate federal court if the alleged claims arise under federal law." *Booth Theatre Foundation, Inc. v. McKiernan,* No. 94–1039–PFK, 1994 WL 114305, at *1 (D.Kan. Mar. 11, 1994). Section 1441 of

Title 28 of the United States Code governs removal generally. It provides that the defendant(s) in a state-court civil action may remove it "to the district court of the United States for the district and division embracing the place where such action is pending," if the district court has original or supplemental jurisdiction over the state-court claims. 28 U.S.C. 1441(a), (c) (1994). "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). "A case may not be properly removed on the basis of federal defenses." *Malmstrom v. Kansas State Board of Healing Arts,* No. 92–4013–R, 1992 WL 104947, at *2 (D.Kan. Apr. 23, 1992). "Because the removal of civil cases to federal court infringes on state sovereignty, courts strictly construe removal statutes and resolve all doubts in favor of remanding the case to state court. The burden of showing the propriety of removal always rests with the removing party." *Barger v. Bristol–Myers Squibb Co.,* No. 93–2485–JWL, 1994 WL 69508, at *1 (D.Kan. Feb. 25, 1994) (citations omitted).

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "In order to properly remove, a defendant must file a notice of removal within thirty days of service of process or of the first date the action becomes properly removable." *Barger,* 1994 WL 69508, at *1 (citing 28 U.S.C. § 1446). "As removal is entirely a statutory right, the relevant procedures ... must be followed. 'Removal statutes are strictly construed to limit the federal court's authority to that expressly provided by Congress and to protect the states' judicial powers." *Dick v. John Deere Ins. Co.,* No. 92–4076–R, 1992 WL 190622, at *1 (D.Kan. July 14, 1992) (quoting *Cohen v. Hoard,* 696 F.Supp. 564, 565 (D.Kan.1988)).

A number of reasons support overruling the motion for removal. First, plaintiff as the party seeking removal is not a defendant in the described actions in state court. 28 U.S.C. §§ 1441, 1443, and 1446. Defendant Ronald S. Oltremari as defendant in C111627 had the only right to remove that case to this

court. Unless her status as daughter makes her a defendant for removal purposes, furthermore, plaintiff Lynn Oltremari here was not a defendant in the child in need of care action, 92JC1481. Such actions are to assure "that each child ... receive the care, custody, guidance, control and discipline, preferably in the child's own home, as will best serve the child's welfare and the best interests of the state." K.S.A. 38–1501 (1993). Plaintiff here has no standing or right to remove these actions from state court. Second, no one has filed a notice of removal in accordance with 28 U.S.C. § 1446 and D.Kan. Rule 202(a). Third, were the court to construe the motion itself as a notice for removal, plaintiff did not timely file with the clerk of the court a copy of all records and proceedings had in state court within twenty days of filing the notice. Plaintiff filed the "notice of removal" on April 18, 1994. She did not file the requisite state-court records until May 25, 1994. She sought no extension of the deadline. D.Kan. Rule 202(d) provides that such failure constitutes grounds to remand a case to state court. *See also* 28 U.S.C. § 1447(b) (1994).

It further appears that plaintiff failed to file a copy of the notice with the Clerk of the District Court of Johnson County, Kansas in accordance with 28 U.S.C. § 1446(d). Had she done so, that court probably would have proceeded no further unless and until this court remanded the case for further action. *See id.* The state court, however, has now resolved the principal issue in the two cases. It has dismissed case 92JC1481 and granted custody of plaintiff to her mother Susan McDaniel. (See Mem. Decision.)

Were the court to construe the motion as a notice, waive strict compliance with D.Kan. Rule 202(d), and ignore the noncompliance with 28 U.S.C. § 1446(d), it should nevertheless overrule the motion for removal. Plaintiff has not carried her burden to show removal is proper. To comply with 28 U.S.C. § 1446, the removing party must file the notice within thirty days of service of process or of the first date the action became properly removable. Plaintiff has not shown the "notice" was filed timely. To the contrary, a "Transcript of Proceedings" (doc. 34) shows

that the summons and petition were served upon the defendant Ronald S. Oltremari on April 26, 1982 in case C111627 in state court. The court finds no record of when Ms. McDaniel or Ronald S. Oltremari, as parents of Lynn Oltremari, were served with process or otherwise received notice of case 92JC1481. The Transcript does show that summons was issued September 2, 1992, however, for service upon them with notice of a hearing set for September 16, 1992. Plaintiff filed her complaint in this court on April 7, 1994. The burden to show that removal is proper and timely rests upon plaintiff. She has not met this burden.

Nor has plaintiff shown that the claims under state law could have been originally filed in federal court. The "Transcript of Proceedings," filed by plaintiff shows that case C111627 was filed on or before April 26, 1992 to terminate the marriage of the parties and incidental thereto, determine the child custody of Lynn Oltremari. The Transcript further shows that case 92JC1481 was filed on or before August 28, 1992, as a proceeding for a child in need of care. "The predominate issue before the [state] court is final custodial placement for [plaintiff]." (See Mem. Decision, at 5.) That plaintiff may have federal defenses to these actions provides no proper basis for removal. The court should overrule her motion for removal.

By the Motion For Restraining Order (doc. 5), plaintiff seeks a restraining order against all actions by defendants toward her and her mother Susan McDaniel. She contends that defendant SRS has attempted to incarcerate her mother by seeking and obtaining a judgment of $6000 against her mother for her foster care. She submits that SRS failed to give her mother proper notice of a hearing, which resulted in a judgment exposing her mother's wages to garnishment, her mother's property to attachment, and a report of the judgment to a credit bureau with consequent destruction of her mother's good credit rating. Plaintiff further contends that SRS has removed her from classes at school, tried to obtain information from her about *in camera* conversations, and otherwise threatened her. Plaintiff claims that financial harassment by SRS has emotionally harmed her mother.

She also claims that she has suffered both intellectually and emotionally.

Fed.R.Civ.P. 65 governs this motion. "The issuance of a temporary restraining order or other preliminary injunctive relief is within the sound discretion of the district court." *Three Ten Enters., Inc. v. Berrenberg Enters., Inc.,* No. CIV.A. 94–2130–GTV, 1994 WL 243773, at *1 (D.Kan. May 13, 1994).

> The standards which govern the granting of a preliminary injunction are well settled in this circuit. The moving party must establish: (1) a showing that the movant will suffer irreparable injury unless the injunction issues; (2) a showing that the injunction, if issued, would not be adverse to the public interest; (3) proof that the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing parties; and (4) substantial likelihood that the movant will eventually prevail on the merits.

*RTC v. Cruce,* 783 F.Supp. 1309, 1310–11 (D.Kan.), *aff'd,* 972 F.2d 1195 (10th Cir.1992). The same standards apply to the granting of a restraining order. *See Three Ten Enters., Inc.,* 1994 WL 243773, at *2.

> Of these standards, "perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. Only when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief."

*Green Constr. Co. v. Kansas Power & Light Co.,* No. CIV.A. 87–2070–S, 1989 WL 106797, at *2 (D.Kan. Aug. 10, 1989) (quoting 11 Wright & Miller, § 2948).

"The movant has the burden to establish by clear proof its right to a preliminary injunction. Mere allegations are not sufficient." *Financial Control Assocs., Inc. v. Equity Builders, Inc.,* 799 F.Supp. 1103, 1113 (D.Kan.1992) (citations omitted). "A temporary restraining order, like a preliminary injunction, is an extraordinary remedy that is the exception rather than the rule." *Three Ten Enters., Inc.,* 1994 WL 243773, at *2.

The court should overrule the motion for restraining order. First, plaintiff provides no affidavit or verified complaint to support her motion as required by Fed.R.Civ.P. 65. "Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction." 11 Wright & Miller, § 2929. Second, plaintiff has not established by clear proof that she is entitled to either a restraining order or a preliminary injunction. She has not shown that she or her mother will suffer irreparable injury in the absence of an injunction. She has not demonstrated that the requested injunction is not adverse to the public interest. She has not shown that the threatened injuries to her outweigh whatever damages the injunction may cause defendants. Nor has she shown any substantial likelihood that she will eventually prevail on the merits. She has shown nothing of consequence to warrant the issuance of a preliminary injunction.

The defendants have each moved to dismiss this action on various grounds. Some appear meritorious; others do not. This report has already concluded that subject matter jurisdiction appears to exist for the claims against defendants SRS, Owens, Fletcher, Ronald Oltremari, Sr., and Johnson County District Attorney's Office, but not as to the other defendants. The several motions to dismiss, however, assert additional grounds.

Defendants Johnson County District Attorney's Office and Owens, guardian *ad litem* for Lynn Oltremari in the state proceedings, argue that plaintiff has not stated a claim against them upon which relief may be granted. Owens contends he is absolutely immune from liability in this action. He suggests that the claims against him are based solely on his functions as guardian *ad litem* in the state court actions.

Plaintiff contends that Owens has not fulfilled a duty to make "independent" evaluations of her best interests. She suggests that he has cooperated with defendant Fletcher, the attorney for Ronald Oltremari, Sr., to threaten incarceration or foster care if plaintiff and her mother did not comply with his opinions. She further suggests that Ow-

ens has denied her due process by engaging in *ex parte* communications with Fletcher. She asserts that guardians *ad litem* may not with impunity engage in *ex parte* communication with opposing attorneys. She also suggests that the cooperation of Owens with SRS shows his failure to independently evaluate her welfare. She characterizes his conduct as gender discrimination, demonstrating his bias. She further contends that he has conspired with co-defendants SRS, Fletcher, and Ronald Oltremari in violation of the Eighth Amendment to the United States Constitution.

As to any claim for gender discrimination or other violation of constitutional rights protected under 42 U.S.C. § 1983, defendant Owens as guardian *ad litem* was not acting under color of state law. *Meeker v. Kercher,* 782 F.2d 153, 155 (10th Cir.1986).

> It is the requirement that the guardian ad litem must exercise independent, professional judgment that is crucial to the determination of whether a guardian ad litem acts under color of state law and is therefore a person liable under § 1983. We hold that a guardian ad litem is not acting under color state law for purposes of § 1983.

*Id.* The same principle would not apply, however, to a claim of conspiracy under 42 U.S.C. § 1985. Under the latter section a private actor may be liable.

As to a claim of conspiracy under 42 U.S.C. § 1985, however, defendant Owens may assert a defense of immunity. Although the Supreme Court has upheld the defense of absolute immunity in several contexts, it has not yet addressed its applicability to guardians *ad litem. See Snell v. Tunnell,* 920 F.2d 673, 686–87 (10th Cir.1990), *cert. denied,* 499 U.S. 976, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991). Other federal courts which have considered the question "have taken a functional approach rather than one based purely on the status of the defendant involved." *Id.* at 687. The mere fact that Owens was serving as guardian *ad litem* for plaintiff does not of itself make him immune to suit.

> [T]he crucial inquiry in resolving a claim of absolute immunity is whether the function for which immunity is claimed is so much

an integral part of the judicial process that to deny immunity would disserve the broader public interest in having participants such as judges, advocates and witnesses perform their respective functions without fear of having to defend their actions in a civil lawsuit.

*Babcock v. Tyler,* 884 F.2d 497, 502 (9th Cir.1989) (citing *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978)). "Immunity from suit attaches to the actions of quasi-judicial officers [such as guardians *ad litem*] acting within the scope of their authority." *Short v. Short,* 730 F.Supp. 1037, 1038 (D.Colo.1990).

"A guardian ad litem must also be able to function without the worry of possible later harassment and intimidation from dissatisfied parents." *Kurzawa v. Mueller,* 732 F.2d 1456, 1458 (6th Cir.1984). "[A] guardian should be absolutely immune when acting as an 'integral part[ ] of the judicial process.' " *Gardner v. Parson,* 874 F.2d 131, 146 (3d Cir.1989) (quoting *Briscoe v. LaHue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983)). "A failure to grant immunity would hamper the duties of a guardian ad litem in his role as advocate for the child in judicial proceedings." *Kurzawa,* 732 F.2d at 1458.

Under Kansas law a guardian *ad litem* has the duties to make an independent investigation of facts relevant to the action and to appear and represent the best interests of the child at the hearing. *In re marriage of Ross,* 245 Kan. 591, 597, 783 P.2d 331, 336 (1989). In performing such duties, a guardian *ad litem* "typically gathers information, prepares a report and makes a recommendation to the court regarding a custody disposition." *Cok v. Cosentino,* 876 F.2d 1, 3 (1st Cir.1989). Absolute immunity applies to providing reports and recommendations to the court. *McCuen v. Polk County,* 893 F.2d 172, 174 (8th Cir.1990). "When a guardian ad litem investigates, makes recommendations to a court, or enters reports, he or she, like the court, must hold paramount the child's best interests. Thus, the guardian ad litem serves as an adjunct of the court." *Short,* 730 F.Supp. at 1038. "Conduct so closely related to a [guardian's] judicial

duties cannot form the basis of a lawsuit if [guardians] are to continue to apprise courts of all relevant information concerning the[ir] ward." *Scheib v. Grant,* 22 F.3d 149, 157 (7th Cir.1994). "Without immunity, guardians ad litem would act like litigation lightening rods." *Short,* 730 F.Supp. at 1039. Judicial mechanisms exist to prevent abuse, misconduct, and irresponsibility of guardians *ad litem.*

First, the immunity attaches only to conduct within the scope of a guardian ad litem's duties. Second, the appointing court oversees the guardian ad litem's discharge of those duties, with the power of removal. Third, parents can move the court for termination of the guardian. Fourth, the court is not bound by and need not accept the recommendations of the guardian. The court can modify or reject the recommendations as it deems appropriate. Parents, of course, may be as involved in the process as they wish. Finally, determinations adopted by an appointing court are subject to judicial review. These procedural safeguards make threat of civil liability unnecessary.

*Id.*

Applying these principles, the court should find defendant Owens absolutely immune from civil liability arising from the performance of his duties as guardian *ad litem.* This immunity would not protect him, however, against liability for conduct beyond the scope of his duties as guardian or which is malicious or in bad faith. *Id.* at 1038. Plaintiff here alleges that Owens stepped outside the scope of his duties and conducted himself in bad faith.

"A complaint may not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Mangels v. Pena,* 789 F.2d 836, 837 (10th Cir.1986). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true. All reasonable inferences must be indulged in favor of the plaintiff, and the pleadings must be liberally construed." *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984) (citations omitted). Although a court will "liberally construe the complaint of a pro se plaintiff, the liberal construction rule 'does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be heard.'" *Miller v. Glanz,* 948 F.2d 1562, 1572 (10th Cir.1991), *aff'd,* 989 F.2d 507 (10th Cir.1993) (Table) (Text on WESTLAW). The burden is on the movant, however, to establish that the plaintiff cannot prove any set of facts that would support a recognized legal claim for relief. *See D'Amario v. Butler Hosp.,* No. CIV.A. 88–0009T, 1990 WL 40916, at *1 (D.R.I. Mar. 13, 1990) (citations omitted).

Plaintiff alleges that Owens in conspiracy with attorney Fletcher secretly saw her and recommended a "custody battle" to cover the dysfunctional handling of her case. She asserts that she "observed a conspiratorial act between Fletcher and Owens to influence Judge Walton, in contempt of Kansas statues [sic] K.S.A. 38–1521 and K.S.A. 28–3815." (See Cause of Action, at 2.) She alleges that Owens and Fletcher threatened witnesses with lawsuits and otherwise repressed and intimidated them. (See Cause of Action, at 3.) She states that Owens "suggested to the Honorable John Hayworth, of Sarasota, Florida, case # 92–1100CJA–21, that [she] should be medicated because she did not wish to return to Johnson County." (See Cause of Action, at 4.) She also alleges that Owens stopped her sexual molestation therapy in 1985, despite the possibility that such therapy might heal her family. She alleges, furthermore, that Owens tried to obtain her mother's child support for his own use; that he has not followed through on recommendations he has made to others to gain their cooperation, that his cooperation with others has profited him politically and financially, that he offers this advantage and bribery to others, and that he has advocated for the adult male members of her family while engaging in gender discrimination against her and her mother. She claims that Owens has not advocated her rights or wishes, but has allowed her to be harassed with repeated custody disputes. She asserts that, while under his control, she has twice been forced to submit to abusive circumstances by his denial of counseling. (See Cause of Action, at 7.)

Plaintiff makes numerous allegations of fact about the conduct of defendant Owens. She strongly criticizes him for allegedly acting and conspiring to her detriment, rather than in her best interests. It seems hard to construe the allegations against Owens as describing conduct other than what he did in the performance of his duties as guardian *ad litem.*[10] If all of these contentions and allegations together be construed in a light most favorable to plaintiff, however, the complaint has alleged sufficient facts to state a claim for violation of constitutional rights, based upon alleged misconduct of a guardian in going beyond his duties as guardian or acting maliciously or in bad faith.

Owens would have the burden, therefore, to show plaintiff unable to prove any set of facts that would support her claim for relief. He has not carried that burden. He has not shown that he acted solely within the scope of his duties as guardian *ad litem.* Nor has he shown that he conducted himself non-maliciously and in good faith. Absent such showings, the immunity afforded guardians *ad litem* does not attach. The court should overrule Owens' Motion To Dismiss (doc. 17).

By its separate motion defendant Johnson County District Attorney's Office (DA) contends that it is not a person for purposes of 42 U.S.C. § 1983. It further asserts that it has immunity from suit by virtue of the Eleventh Amendment to the United States Constitution, that it is not an entity which can be sued, and that federal courts lack jurisdiction to enforce state law.

"It is well settled that the Eleventh Amendment, in the absence of consent, bars suit against the state or one of its agencies or departments in federal court." *Barger v. State,* 620 F.Supp. 1432, 1434 (D.Kan.1985). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). The "immunity extends only to the states themselves and to those governmental entities that are 'arms of the state.'" *Ambus v. Granite Bd. of Educ.,* 995 F.2d 992,

994 (10th Cir.1993). The "immunity is not available to municipalities or counties." *Miller v. Phelan,* 845 F.Supp. 1201, 1208 (N.D.Ill.1993).

Thus, the issue is whether defendant DA "is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977). "Such a determination is made by examining the powers, nature and characteristics of the agency under state law." *Meade v. Grubbs,* 841 F.2d 1512, 1525 (10th Cir. 1988).

In Kansas county district attorneys are officers of the state. *See State v. Baker,* 249 Kan. 431, 444, 819 P.2d 1173, 1183 (1991); *State v. Berg,* 236 Kan. 562, 567, 694 P.2d 427, 432 (1985). When the Supreme Court of a state has decided that district attorneys are officers of the state, the Eleventh Amendment to the United States Constitution gives them immunity from suit. *See Rozek v. Topolnicki,* 865 F.2d 1154, 1158 (10th Cir.1989) (finding Eleventh Amendment immunity appropriate for district attorneys in light of a Colorado Supreme Court holding district attorneys to be executive officers of the state).

Under Kansas law, moreover, an elected district attorney is "declared to be an executive officer of the judicial district in which such attorney is elected ... and in no event shall said district attorney be deemed an officer of any county." K.S.A. 22a–101, 22a108 (1988). Kansas law defines a district attorney as a state officer, not as a county officer. *Compare* K.S.A. 25–2505(b) *with* K.S.A. 25–2505(c). The Kansas attorney general has taken these statutory provisions as "a clear indication that the district attorney is an employee of the state, as opposed to an employee of a municipality, for purposes of the [Kansas Tort Claims Act]." (See Attorney General Opinion No. 87–13, attached to Supplement To Mem. In Supp. of

---

**10.** The court should note that in the state court proceedings, defendant Owens apparently recommended that custody of plaintiff be placed with her mother. (See Supplement To SRS's Mot. To Dismiss, doc. 46, at 2.)

the Mot. To Dismiss of the Johnson County District Attorney's Office, doc. 29.) The court should find defendant DA to be an arm of the state; thus, it would have Eleventh Amendment immunity afforded to states.

Such immunity, however, may be waived and the Supreme Court of the United States "consistently has held that a State may consent to suit against it in federal court." *Pennhurst State School & Hosp.*, 465 U.S. at 99, 104 S.Ct. at 907. The consent of the state must be "unequivocally expressed." *Id.* There is no indication that the immunity has been waived or that the state has consented to suit. DA appears immune from liability in this action.

"A court may dismiss a complaint [for failure to state a claim] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). When immunity protects a defendant from the allegations of the complaint, the court can grant no relief to a plaintiff against that defendant. The court should dismiss the action of plaintiff against DA for failure to state a claim upon which relief can be granted.

Defendants Fletcher, Colin Oltremari (Colin), and Ronald Oltremari, Jr.[11] challenge the sufficiency of service and process and, consequently, jurisdiction over their persons. They contend that the summonses contain addresses for service that do not comply with K.S.A. 60–304(a). They attack the sufficiency of service of process in that the summonses were not served at addresses complying with K.S.A. 60–304(a) and Fed.R.Civ.P. 4(e). "A federal court is without personal jurisdiction over a defendant if service of process is found insufficient under Federal Rule of Civil Procedure 4." *Hunt v. Board of Educ.*, No.

89 C 4359, 1989 WL 121292, at *1 (N.D.Ill. Sept. 28, 1989).

The individual defendants all reside in the District of Kansas. Fed.R.Civ.P. 4(e) governs service upon them.[12] It provides:

> Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:
>
> (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or
>
> (2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Plaintiff has not pursued the procedure described in Fed.R.Civ.P. 4(e)(2). That subsection, therefore, does not apply. By virtue of Rule 4(e)(1) Kansas law applies. The court sits in Kansas. Plaintiff has attempted service of process in Kansas.

K.S.A. 60–304(a) governs service of process in Kansas. To effect service upon an adult, nondisabled individual, a plaintiff must pursue a procedure described in K.S.A. 60–303. Plaintiff here attempted to serve the individual defendants by certified mail. K.S.A. 60–303(b) permits such service as follows:

> [T]he sheriff of the county wherein the action is filed shall serve any process by certified mail, evidenced by return receipt signed by any person or by restricted de-

---

**11.** These defendants will be collectively referred to as the individual defendants.

**12.** "Additionally, Rule 4(d) provides an alternate method whereby a plaintiff may notify a defendant of the commencement of an action and request that the defendant waive service." *Bernard v. Husky Truck Stop*, No. 93–2241–JWL, 1994 WL 171732, at *2 (D.Kan. Apr. 20, 1994).

Nothing of record indicates that plaintiff sought such a waiver. Fed.R.Civ.P. 4(d)(4) requires that a waiver of service be filed with the court. Standing Order Number 1994–1 of the District of Kansas provides that plaintiff shall file an executed waiver within fifteen days of its receipt. Without such a filing, the court should assume no one has waived service.

livery.... The sheriff, attorney for the party seeking service or the party, if the party is not represented by an attorney, shall cause a copy of the process and petition or other document to be placed in an envelope addressed to the person to be served in accordance with K.S.A. 60–304, and amendments thereto, adequate postage to be affixed, and the sealed envelope to be placed in the United States mail as certified mail return receipt requested with instructions to the delivering postal employee to show to whom delivered, date of delivery, and address where delivered.... Service of process shall be considered obtained under K.S.A. 60–203, and amendments thereto, upon the delivery of the certified mail envelope.

K.S.A. 60–304(a) requires service by certified mail on an adult, nondisabled individual to be addressed to "the individual's dwelling house or usual place of abode." It does not allow service by certified mail to a business address, until the "certified mail to the individual's dwelling house or usual place of abode is refused or unclaimed." In the latter event such service is permitted only "after filing a return on service stating the certified mailing to the individual at such individual's dwelling house or usual place of abode has been refused or unclaimed." K.S.A. 60–304(a).

The individual defendants appear to challenge the sufficiency of summons pursuant to Fed.R.Civ.P. 12(b)(4). "A Rule 12(b)(4) motion constitutes an objection to the form of process or the content of the summons rather than the method of its delivery." *Blue Ocean Lines v. Universal Process Equip., Inc.*, No. 93 Civ. 1722 (SS), 1993 WL 403961, at *4 (S.D.N.Y. Oct. 7, 1993). They object to the addresses on the summons. "Technically, [however], a Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4[ (a) ] or any applicable provision incorporated by Rule 4[ (a) ] that deals specifically with the content of the summons." [13] 5A Wright & Miller, *supra* § 1353.

No individual defendant has stated an adequate challenge to the content of the summonses or to the form of process. Rule 4(a) requires that "[t]he summons ... be directed to the defendant." It sets forth no requirement regarding the address of that defendant. No individual defendant, moreover, has shown the alleged defect to be prejudicial. A Rule 12(b)(4) motion should "be granted only when the defect is prejudicial to defendant." 5A Wright & Miller, *supra* § 1353. The court should overrule the motions to dismiss of the individual defendants to the extent they seek dismissal under Fed. R.Civ.P. 12(b)(4).

The individual defendants also appear to challenge the sufficiency of service of process, pursuant to Fed.R.Civ.P. 12(b)(5). "A Rule 12(b)(5) motion ... challenges the mode or lack of delivery of a summons and complaint." *Blue Ocean Lines*, 1993 WL 403961, at *4. "Objections to the sufficiency of process 'must be specific and must point out in what manner the plaintiff has failed to satisfy the service provision utilized.'" *O'Brien v. R.J. O'Brien & Assocs.*, 998 F.2d 1394, 1400 (7th Cir.1993). Defendant Fletcher specifically contends that the address on his summons is a business office that he did not occupy when plaintiff issued the summons. Defendants Colin and Ronald Oltremari, Jr. specifically contend that the addresses on their summonses are not their residences. The individual defendants all submit that plaintiff failed to satisfy K.S.A. 60–304(a) and Fed.R.Civ.P. 4(e). These contentions sufficiently raise the issue of sufficiency of service.

"When [a] defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service." *Blue Ocean Lines*, 1993 WL 403961, at *4. "A signed return of service constitutes prima facie evidence of valid service 'which can be overcome only by strong and convincing evidence.'" [14] *O'Brien*, 998

---

13. Amendments effective December 1, 1993 to Fed.R.Civ.P. 4 have basically switched subdivisions (a) and (b). "Revised subdivision (a) contains most of the language of the former subdivision (b).... Revised subdivision (b) replaces the former subdivision (a)." Fed.R.Civ.P. 4 advisory committee note (1993 Am.). The revised labels

will be utilized in this report and recommendation.

14. Neither the Tenth Circuit nor the District of Kansas has apparently ruled upon the showing necessary to overcome the presumption of valid

F.2d at 1398. Such a return would also constitute *prima facie* evidence of compliance with the requirements of due process. Valid service requires such compliance. "Although the return of service is strong evidence of the facts stated therein, it is not conclusive and may be controverted upon a showing that the return is inaccurate." 4A Wright & Miller, *supra* § 1130 (footnotes omitted). "[A] bare allegation by a defendant that he was improperly served cannot be allowed to bely [sic] the [return of service]." *FROF, Inc. v. Harris*, 695 F.Supp. 827, 829 (E.D.Pa.1988).

Plaintiff has shown adequate service upon defendants Fletcher and Ronald Oltremari, Jr. A United States Marshal has signed a return of service showing that they have been served. (See United States Marshals Returns of Service, docs. 11 and 14.) Neither defendant has proffered an affidavit or other strong and convincing evidence that they were improperly served. A United States Marshal certified that they were served with a summons and complaint on April 18, 1994 via certified mail. Someone signed for the certified mail on April 19 or 20, 1994. The United States Marshals received an acknowledgment of service for each on April 21, 1994. (See United States Marshals Returns of Service, docs. 11 and 14.) Other than bare assertions that the addresses on the summonses were not in accordance with K.S.A. 60–304(a), the court should find no indication of improper service. The court should not dismiss the action of plaintiff against these defendants on such bare assertions. When plaintiff has filed returns of

service, dismissal pursuant to Fed.R.Civ.P. 12(b)(5) requires strong and convincing evidence that service was in fact improper. Neither Fletcher nor Ronald Oltremari, Jr. have presented such evidence. The court should overrule their motions to dismiss (docs. 19 and 22) to the extent they seek to dismiss the action against them pursuant to Fed.R.Civ.P. 12(b)(5).

The ruling of the court should be the same, even were it to accept the contentions that plaintiff has not complied with the technical requirements for service by certified mail, as stated in K.S.A. 60–304(a).[15] That plaintiff proceeds *pro se* does not relieve her of compliance with Fed.R.Civ.P. 4. *DiCesare v. Stuart*, 12 F.3d 973, 980 (10th Cir.1993). The Tenth Circuit Court of Appeals, however, "believes that courts should generally overrule technical objections to service of process when the defendant has not been denied due process." *Ames v. Uranus, Inc.*, No. 92–2170–JWL, 1993 WL 144590, at *2 (D.Kan. Apr. 13, 1993) (citing *Nikwei v. Ross School of Aviation, Inc.*, 822 F.2d 939, 945–46 (10th Cir.1987)). "Due process requires that the service of process be reasonably calculated to provide the defendant with actual notice of the suit and an opportunity to defend." *Beck v. Atlantic Contractors Co.*, 157 F.R.D. 61, 64 (D.Kan.1994) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). In other words, "due process requires that the form of notice be 'reasonably calculated, under all the circumstances, to apprise inter-

---

service. "In interpreting the import of a signed return of service, before amendment of Rule 4 [in 1983] to allow service by other than a United States Marshal, the signed return of service was found to be prima facie evidence of valid service." *Trustees of Local Union No. 727 Pension Fund v. Perfect Parking, Inc.*, 126 F.R.D. 48, 52–53 (N.D.Ill.1989). Thus, signed returns of service "import a verity 'which can only be overcome by strong and convincing evidence.'" *Id.* Retaining this standard for overcoming the presumption has been the choice of some courts. *See Id.; O'Brien*, 998 F.2d at 1398. Others suggest that a lesser showing might now be appropriate to refute it. *See FROF, Inc.*, 695 F.Supp. at 829; *Blue Ocean Lines*, 1993 WL 403961, at *4 n. 2. The court need not decide whether a lesser showing may be appropriate in some circumstances. United States Marshals served the defendants in this case. Thus, the same standard

utilized prior to the 1983 amendments to Rule 4 would appear to remain applicable to the service here at issue.

**15.** If the residence of a defendant is unknown, a plaintiff may file an affidavit to that effect and "direct that the service ... be made ... by directing an officer, partner, managing or general agent, or the person having charge of the office or place of employment at which the defendant is employed, to make the defendant available for the purpose of permitting serv[ice of] process." K.S.A. 60–304(h) (Supp.1993). Plaintiff here has filed no affidavit that the place of residence of any defendant was unknown. Thus, she cannot rely upon K.S.A. 60–304(h) for attempting to serve the individual defendants at their business addresses.

ested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Campbell v. Bartlett*, 975 F.2d 1569, 1575 (10th Cir.1992) (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657).

In this instance the certified mailings appear to comport with the requirements of due process. The signed returns of service establish a *prima facie* case of compliance. Defendants Fletcher and Ronald Oltremari, Jr. have not refuted this *prima facie* case. Their motions show that they have been apprised of the pendency of this action. The law, moreover, "presumes that a letter properly addressed, stamped, and mailed was received by the person to whom it was addressed." *Phillips v. Riverside, Inc.*, 796 F.Supp. 403, 407 (E.D.Ark.1992); *see also, Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir.1989) (citing *Hagner v. United States*, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932)). A signed certificate of receipt for certified mail would logically raise an inference that the recipient has some direct or implied authority to accept the mail on behalf of the addressee. Neither Fletcher nor Ronald Oltremari, Jr. contends he did not receive the summons and complaint. Nor do they contend that the service of process failed to comply with due process. That certified mail is not delivered directly to a defendant, moreover, "does not operate to invalidate the service." *Atlantic Contractors Co., Inc.*, 157 F.R.D. at 63. This interpretation of the statute does not violate due process. *Id.* at 63–64. Defendants Fletcher and Ronald Oltremari, Jr. have not overcome the *prima facie* showing of compliance with due process. Without some infringement of due process, the court should overrule their objections of technical insufficiency of service of process.

"[T]he federal courts[, moreover,] have generally taken a permissive attitude towards the mechanism employed for service of process when the defendant actually receives notice." *Kitchens v. Bryan County Nat'l Bank*, 825 F.2d 248, 256 (10th Cir.1987). "The formalities of the legal system are available to protect the interest of all parties and may not be used to avoid obligations for a period of time sufficient to insure Plaintiffs will be unavailable to pursue their legal rights." *Nikwei*, 822 F.2d at 946. Precedent in the District of Kansas suggests that in the absence of prejudice, furthermore, the fact that a defendant has never received a copy of the summons will not support a motion to dismiss when he had notice of the lawsuit. *Sigco Sunplant, Inc. v. Silkman*, No. 89–2230–V, 1990 WL 126813 (D.Kan. Aug. 20, 1990).

Although plaintiff may have sufficiently served process on defendant Ronald Oltremari, Jr., the court should nevertheless dismiss this action against him. Plaintiff has alleged no legal misconduct on his part. The complaint and attached Cause of Action make no specific allegations against him. Reading a *pro se* complaint liberally does not mean speculating about what might have been alleged. The court cannot exercise subject matter jurisdiction over a claim which does not exist.

The court should dismiss this action as it pertains to defendant Colin Oltremari for the same reasons. Plaintiff, furthermore, has not shown adequate service upon Colin. The Leawood Police Department returned to the Marshal the summons and complaint intended for him, because he was not an employee or resident of the Leawood Police Department. (See Letter from Cox to United States Marshals Service of 4/27/94, attached to United States Marshals Amended Return of Service, doc. 16.) Plaintiff has presented no other proof of service. She has not, therefore, carried her burden to show adequate service upon Colin.

The objections of defendant Colin Oltremari to the service of process, furthermore, raise more than mere technicality. Due to an incorrect address, he received neither the summons nor the complaint. That he somehow obtained knowledge of this action does not help plaintiff; because the deficiency goes beyond technical defect and falls short of constitutional due process. Due process requires that *the service of process* be reasonably calculated under all circumstances to provide actual notice of the suit and an opportunity to defend. Plaintiff has the burden to make a *prima facie* showing that the service of process satisfied such require-

ments. She has made no such showing. Under all the circumstances the service directed towards Colin does not appear reasonably calculated to provide the requisite notice, notwithstanding his having obtained actual notice of the action. The certified mailing to a municipal police department as the address for Colin does not comport with the requirements of due process. Even the liberality accorded by courts when a defendant has actual notice does not save plaintiff against faulty service which falls short of the requirements of due process.

When service of process is insufficient, the court may dismiss the action without prejudice. The court should note, however, that plaintiff proceeds *in forma pauperis*. (See Order of April 7, 1994, doc. 2.) "[A] party proceeding in forma pauperis is entitled to rely on the United States Marshal for service of the summons and complaint." *Garland v. State of Kan. Dep't of Revenue*, No. 93–4241–SAC, 1994 WL 66614, at *1 n. 2 (D.Kan. Jan. 31, 1994); *see also*, Fed.R.Civ.P. 4(c)(2); 28 U.S.C. § 1915(c) (1994). The court should not penalize plaintiff with dismissal of her case "when service fails because the Marshal or clerk's office does not perform the duties specified by the rule and statute," unless the defects result from inadequate or inaccurate information presented by plaintiff or on a lack of diligence on the part of plaintiff. *Garland*, 1994 WL 66614, at *1 n. 2. Absent a blameworthy plaintiff, the court should "instruct the clerk's office and U.S. Marshal to correct the defects in service without dismissing the action." *Id.*

In this instance plaintiff does not appear totally blameless. The United States Marshal or his deputy attempted to serve Colin at the Leawood Police Department. The record does not show whether the Marshal himself determined the address or whether plaintiff provided it. In either event plaintiff must carry more of a burden than she has shown. "[A] plaintiff should request service upon the appropriate defendant and attempt to remedy any apparent service defects of which plaintiff has knowledge." *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir.1987). Plaintiff should have known that a person would not reside at the Leawood Police De-

partment. She had notice that the address was incorrect when the Marshal filed the amended return of service on May 3, 1994. It revealed that the Leawood Police Department had returned the service unexecuted. Plaintiff has not acted diligently to attempt further service. The court should sustain the Special Appearance and Motion To Dismiss Challenging Jurisdiction, Sufficiency of Process, and Sufficiency of Service of Process (doc. 21) of defendant Colin Oltremari.

"In opposing a motion to dismiss filed before trial, the plaintiff[s] ha[s] the burden of making a prima facie showing that the statutory and due process requirements are satisfied in order to permit the court to exercise personal jurisdiction over the defendant[s]." *Ames*, 1993 WL 144590, at *1. Plaintiff here has sustained this burden in regards to defendants Fletcher and Ronald Oltremari, Jr. She has not done so in regards to defendant Colin Oltremari. The court should overrule the motions to dismiss of Fletcher and Ronald Oltremari, Jr. to the extent they seek dismissal for lack of personal jurisdiction.

Defendant SRS also moves for dismissal for lack of proper service. As a governmental agency of Kansas, it contends that Kansas law requires service of process upon the attorney general or an assistant. It argues that service to its Olathe, Kansas office does not suffice.

Fed.R.Civ.P. 4(j) governs service upon foreign, state, or local governments. Rule 4(j)(2) provides:

Service upon a state, municipal corporation, or other governmental organization subject to suit shall be effected by delivering a copy of the summons and of the complaint to its chief executive officer or by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other like process upon any such defendant.

"The waiver-of-service provision [ (Rule 4(d)) ] is … inapplicable to actions against governments subject to service pursuant to this subdivision." Fed.R.Civ.P. 4 advisory committee's note (1993 Am.). Plaintiff may serve SRS, an agency of the state of Kansas, therefore, by serving the chief executive officer of SRS or by complying with the service

requirements of Kansas. K.S.A. 60–304(d)(5) states that service upon a governmental agency of Kansas is made by "serving the attorney general or an assistant attorney general. Service by certified mail shall be addressed to the appropriate official at the official's governmental office."

Even assuming the chief executive officer of SRS received the certified mailing of service, plaintiff has nevertheless not "delivered" a copy of the summons and complaint to him or her. " 'Delivering' means personal service on the chief executive officer and does not allow for service by mail." *Garland*, 1994 WL 66614, at *1. "[M]ail service is ineffective in cases when the state [or an agency thereof] is subject to suit." *Knight v. State of Kansas, Bd. of Regents, Univ. of Kan. Med. Ctr.*, No. CIV.A. 89–2392–O, 1990 WL 154206, at *1 (D.Kan. Sept. 6, 1990). Use of certified mail does not comply with Fed.R.Civ.P. 4(j)(2). "The cases are numerous which decide that where a particular method of serving process is pointed out by statute that method must be followed ... [citations omitted]. 'There is no chance to speculate whether some other mode will not answer as well.' " *Knight*, 1990 WL 154206, at *2 (quoting *Amy v. City of Watertown*, 130 U.S. 301, 316–17, 9 S.Ct. 530, 535–36, 32 L.Ed. 946 (1889)).

Kansas law does allow service by certified mail. K.S.A. 60–303(b). In this instance, however, it also requires service upon the attorney general or an assistant attorney general. K.S.A. 60–304(d)(5). Plaintiff here served process upon SRS at its office in Olathe, Kansas. She did not serve the attorney general or an assistant attorney general. Plaintiff did not comply, therefore, with K.S.A. 60–304(d)(5). "When the statute designates a particular officer to whom process must be delivered and with whom it may be left, ... no other officer or person can be substituted in his place. The designation of one particular officer upon whom service may be made excludes all others." *Knight*, 1990 WL 154206, at *2 (quoting *Amy*, 130 U.S. at 316–17, 9 S.Ct. at 535–36).

Plaintiff must show the validity of the service. She has filed a return of service for SRS, signed by a United States Marshal.

(See United States Marshals Return of Service, doc. 12.) The Marshal verified that a summons and complaint was sent to defendant SRS at an Olathe, Kansas address via certified mail on April 18, 1994. An agent of SRS signed for it on April 19, 1994. The office of the Marshal received an acknowledgement on April 21, 1994. Such returns constitute *prima facie* evidence of valid service. SRS, however, has rebutted that *prima facie* showing. It asserts that plaintiff served someone other than the attorney general or an assistant attorney general by certified mail. The return of service itself constitutes strong and convincing evidence to support this assertion.

The court should conclude that SRS was improperly served with process under Fed. R.Civ.P. 4(j)(2) and K.S.A. 60–304(d)(5). The principle of rejecting technical objections to service does not save the service in this instance. The defects are not "technical." When legislators have acted to designate a particular recipient for process or have specified a particular method of service upon the state, the courts must enforce the statutory procedure. "The purpose of requiring service upon the Attorney General or an Assistant Attorney General is to insure the prompt notification of the Attorney General's office of all legal actions against the state. Such service allows for the subsequent coordination and supervision of the defense by the Attorney General." *Knight*, 1990 WL 154206, at *2. Requiring personal service upon the chief executive officer of a state agency assures that the person in charge of the agency receives the service of process. Within a large agency, mail, even certified mail, can become lost. Without substantial compliance with the statute, actual notice of the suit does not confer personal jurisdiction over the defendant.

Dismissal of the action against SRS without prejudice would be appropriate, if plaintiff were not proceeding *in forma pauperis*. Fault generally does not lie with a plaintiff when a United States Marshal serves a state agency improperly. *See Garland*, 1994 WL 66614, at *1 n. 2. In *Garland*, like here, a United States Marshal did not comply with

Fed.R.Civ.P. 4(d)(6) [16] or K.S.A. 60–304(d)(5) when the summons and complaint were sent by certified mail to the Kansas Department of Revenue instead of the attorney general, an assistant attorney general, or the chief executive officer of the department. The *Garland* court held that "[t]he alleged defects here cannot be blamed on the plaintiff presenting inadequate or inaccurate information or on the plaintiff not being diligent." *Id.* at *1 n. 2. The court should follow *Garland* and not hold plaintiff responsible for the failure of the United States Marshal to effectuate proper service.

In this instance plaintiff appears to have done all she could. A lay person would probably not know that a state agency must be served by personally serving the chief executive officer of that agency or by directing service to the attorney general or an assistant attorney general. Plaintiff need only request service upon the appropriate defendant and attempt to remedy any apparent defects in service of which she has knowledge. *Rochon,* 828 F.2d at 1110. Although plaintiff apparently requested service upon SRS, the defects in service were of a type that would not be readily apparent to a *pro se* plaintiff. The court can instruct the offices of the clerk and the Marshal to correct the defects in service without dismissing the action against SRS.

SRS also argues that collateral estoppel and *res judicata* are grounds for dismissal. Federal courts traditionally have adhered to these related doctrines.

> Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.

*Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). These doctrines "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial

resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Northern Natural Gas Co. v. Grounds,* 931 F.2d 678, 681 (10th Cir.1991).

SRS argues that collateral estoppel should prohibit the commencement of duplicate litigation before a final decision is rendered. It cites no authority for this proposition. "In the Tenth Circuit, collateral estoppel requires that four elements be met," one of which is that the issue previously decided be identical to the one now presented. *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation,* 975 F.2d 683, 687 (10th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993). The District Court of Johnson County, Kansas has held that in the best interests of Lynn Oltremari she be placed in the sole custody of her mother, Susan McDaniel. (See Mem. Decision, attached to Supplement To Kansas Department of Social and Rehabilitative Services Mot. To Dismiss, doc. 46.) It did not decide issues identical to those now before this court. It did not discuss the alleged harassment, constitutional violations, gender discrimination, conspiracy, or any of the declarations sought on the behalf of Lynn Oltremari here at issue. Collateral estoppel, therefore, does not constitute grounds for dismissing the action against SRS.

Because the District Court of Johnson County, Kansas has now issued a decision on the matters before it, defendant SRS reiterates *res judicata* as grounds for dismissal. "A claim is barred by res judicata if three elements exist: (1) a final judgment on the merits in the prior suit; (2) the prior suit involved identical claims as the claims in the present suit; and (3) the prior suit involved the same parties or their privies." *Satsky v. Paramount Communications, Inc.,* 7 F.3d 1464, 1467 (10th Cir.1993). "The doctrine prevents the relitigation of 'issues that were or could have been dealt with in an earlier litigation.'" *Northern Natural Gas Co.,* 931 F.2d at 681.

> The rule is binding, not only as to every question actually presented, considered

---

**16.** Amendments to Fed.R.Civ.P. 4 effective December 1, 1993 redesignated subsection 4(d)(6) as 4(j)(2). *See* Fed.R.Civ.P. 4 advisory committee's note (1993 Am.).

and decided, but also to every question which might have been presented and decided. The doctrine of res judicata prevents the splitting of a single cause of action or claim into two or more suits; it requires that all the grounds or theories upon which a cause of action or claim is founded be asserted in one action or they will be barred in any subsequent action. *Fisher v. Balzer,* No. CIV.A. 88–1716–T, 1991 WL 86158, at *2 (D.Kan. Apr. 30, 1991).

There appears to be no question that there is a judgment on the merits of the state court action and that SRS and plaintiff were both parties to it. Uncertainty, however, surrounds the finality of the state court decision. "The court recognizes that while the requirements of finality have been universally relaxed where issue preclusion [ (collateral estoppel) ] is applied in a subsequent action, the same is not true of claim preclusion [ (*res judicata*) ]." *Phillips USA, Inc. v. Allflex USA, Inc.,* No. 92–CV–2405–JWL, 1994 WL 398221, at *4 (D.Kan. July 19, 1994). Generally, when a decision or judgment leaves open a question of "damages or other remedies, the decision is not final for purposes of bringing an appeal. The fact that an appeal is not yet available indicates that the judgment is less than conclusive, counseling against preclusion." *Id.* In this instance the state court left open the financial issues in the matter before it. (See Mem. Decision, at 12–13.) It thus appears that the state court proceeding has not yet reached a final adjudication on the merits. *Res judicata* or claim preclusion would not constitute grounds, therefore, to dismiss this action against SRS. Mere conclusions that the doctrine applies will not support dismissal. All elements of the doctrine must be present to establish a preclusive effect. *Farha v. FDIC,* 963 F.2d 283, 286 (10th Cir.1992).

SRS further urges the court to decline jurisdiction of this case on grounds of "Federalism and the need for finality." This court should treat the proposal as a request for abstention under *Younger v. Harris,* 401 U.S. 37, 45, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971). The doctrine of "Our Federalism" refers to abstention. Wright & Miller, *supra* §§ 4251–55. "[E]ven though subject matter jurisdiction might be proper, sufficient grounds [sometimes] exist to warrant abstention from the exercise of that jurisdiction." *See Ankenbrandt,* 504 U.S. at ——, 112 S.Ct. at 2215.

Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest."

*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–64, 3 L.Ed.2d 1163 (1959)). "Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given them.'" *Ankenbrandt,* 504 U.S. at ——, 112 S.Ct. at 2215 (quoting *Colorado River Water Conservation Dist.,* 424 U.S. at 817, 96 S.Ct. at 1246. Abstention rests upon the theory that "the accused should first set up and rely upon his [or her] defense in the state courts, even though this [may] involve[ ] a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection." *Younger,* 401 U.S. at 45, 91 S.Ct. at 751.

"*Younger v. Harris* … and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar. Ass'n,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2520, 73 L.Ed.2d 116 (1982). "[T]he Supreme Court explained [the policy] in terms of its consonance with two fundamental principles. One, equitable relief is traditionally limited to instances when irreparable injury will occur without it because the legal remedy is inadequate." *Phelps v.*

*Hamilton*, 828 F.Supp. 831, 841 (D.Kan.1993) (hereinafter referred to as *Phelps I* ) (citing *Younger*, 401 U.S. at 43–44, 91 S.Ct. at 750–51). The most vital consideration behind the policy, however, is

> "... the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.... The concept does not mean blind deference to 'States' Rights' any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States."

*Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 10, 107 S.Ct. 1519, 1525, 95 L.Ed.2d 1 (1987) (quoting *Younger*, 401 U.S. at 44, 91 S.Ct. at 750). "The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex Ethics Comm.*, 457 U.S. at 432, 102 S.Ct. at 2521. The concern for "comity" mandates application of *Younger* abstention "when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co.*, 481 U.S. at 11, 107 S.Ct. at 1526.

> The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature.... Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. Where vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." "[T]he pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims...."

*Middlesex Ethics Comm.*, 457 U.S. at 432, 102 S.Ct. at 2521.

*Middlesex Ethics Comm.* sets forth a test, consisting of three criteria. 17A Wright & Miller, *supra* § 4254. First, is there a pending state judicial proceeding; "second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex Ethics Comm.*, 457 U.S. at 432, 102 S.Ct. at 2521 (emphasis deleted). In this instance plaintiff has identified two cases instituted before this action and which remain "pending" in state court.[17] "It is well settled that for purposes of *Younger* abstention a proceeding is considered pending until all appellate court remedies have been exhausted." *Neustein v. Orbach*, 732 F.Supp. 333, 341 (E.D.N.Y.1990). The record shows nothing to indicate the state appellate process for either proceeding has been exhausted.

> *Younger* standards must be met to justify federal intervention in a state judicial proceeding as to which a losing litigant has not exhausted his [or her] state appellate remedies.
>
> ... [T]he considerations of comity and federalism which underlie *Younger* permit no truncation of the exhaustion requirement merely because the losing party in the state court of general jurisdiction believes that his [or her] chances of success on appeal are not auspicious.

---

**17.** As previously noted, they are C111627 and 92JC1481 in the District Court of Johnson County, Kansas. "When a state proceeding is commenced before the federal suit is filed, the risk of federal interference is greater and the state interest is stronger. The state interest that is triggered by the institution of the state proceeding continues through the completion of the state appeals process." *Donker v. City of New York Human Resources Admin. Special Servs. For Children*, 673 F.Supp. 1221, 1225 (S.D.N.Y.1987).

*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 609–10, 95 S.Ct. 1200, 1210–11, 43 L.Ed.2d 482 (1975). The attempt of plaintiff to proceed simultaneously in both state and federal forums appears to be a calculated, ill conceived "attempt to end run established legal principles and avoid a forum she perceives as hostile against her." *See Neustein,* 732 F.Supp. at 341. The court should find here that the first criterion of *Younger* abstention, as set out in *Middlesex Ethics Comm.,* is satisfied.

The second criterion also appears satisfied. The litigation pending in state court centers around domestic relations: termination of marriage and more particularly the custody of a minor child. States have a strong interest in such matters. *Vaughan,* 883 F.2d at 65. "Family relations are a traditional area of state concern." *Moore v. Sims,* 442 U.S. 415, 435, 99 S.Ct. 2371, 2383, 60 L.Ed.2d 994 (1979). "[S]tates have a compelling interest in cases involving determinations of parental rights and custody." *Thomas v. New York City,* 814 F.Supp. 1139, 1149 (E.D.N.Y.1993). "[S]tate courts have a paramount if not exclusive interest in child custody cases." *Neustein,* 732 F.Supp. at 341.

The third criterion also appears to be met. State courts "are fully competent to decide federal constitutional questions." *Id.* at 342 (citing *Moore,* 442 U.S. at 430, 99 S.Ct. at 2380). Plaintiff "can certainly raise … constitutional claims in the state proceeding[s]." *See Thomas,* 814 F.Supp. at 1149. "Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex Ethics Comm.,* 457 U.S. at 431, 102 S.Ct. at 2520. "Except in the most extraordinary cases, a federal court must presume that state courts, consistent with the imperatives of the Supremacy Clause, *see* U.S. Const. art. VI, are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties." *Phelps v. Hamilton,* 840 F.Supp. 1442, 1451 (D.Kan.1993) (hereinafter referred to as *Phelps II* ) (quoting *Casa Marie, Inc. v. Superior Court,* 988 F.2d 252, 262 (1st Cir.1993)).

State courts are the principal expositors of state law. Almost every constitutional challenge … offers the opportunity for narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests. When federal courts disrupt that process of mediation while interjecting themselves in such disputes, they prevent the informed evolution of state policy by state tribunals. The price exacted in terms of comity would only be out-weighed if state courts were not competent to adjudicate federal constitutional claims—a postulate we have repeatedly and emphatically rejected.

In sum, the only pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims. …

*Moore,* 442 U.S. at 429–30, 99 S.Ct. at 2380–81 (citations omitted). Kansas law appears to raise no procedural barriers. Plaintiff has the burden to show any procedural barrier against her assertion of constitutional issues in state court. *See Donker,* 673 F.Supp. at 1227. Without such a showing, she "had and continues to have even now an opportunity to raise federal issues in state court." *Id.*

In her complaint plaintiff seeks the following relief: "Remove from jurisdiction[,] appoint legal defense or allow litigation." (See Civil Compl, ¶ III.) She contends the wrongs alleged in the complaint are continuing to occur. (See Civil Compl., ¶ IV.) She seeks $500,000 in actual and punitive damages for harassment. (See Civil Compl., ¶ VI.) In the Cause of Action, attached to the complaint, plaintiff further seeks relief in the nature of a declaration upon the following issues:

A. Whether or not a child has a fundamental right to her own legal counsel, where, as here, she is asserting inalienable and other constitutional and legal rights, and whether SRS and the guardian-ad-litem have acted as 'potted plants growing their own flowers' or as 'an arm of a ruling' while failing to ensure fair hearing and enforcement of said rights;

B. Whether or not the minor child is guaranteed the right to access to the court

under the procedural and substantive due process requirements of the 14th Amendment to the United States Constitution;

C. Whether or not the minor child has a constitutionally protected right to petition the Court in her own name for the right to establish her jurisdiction, legal custody, and her best interests pursuant to section 10 of the Kansas Bill of Rights and the 5th, 8th and 9th Amendments to the United States Constitution.

D. Whether the State of Florida is the most convenient and appropriate forum to decide the manifest best interests of the child, considering her significant contacts with Florida and the wealth of information available to the Court.

E. Whether or not the opinions and influence of SRS and Owens are not in her best interests in light of {1} SRS and Owens failed to fulfill their legal obligations to Lynn while she resided in Kansas, as well as during the seven years that Lynn resided in Florida, {2} the fact that SRS and Owens are asserting positions contrary to the constitutional and other legal rights of the child and which constitute cruel and unusual punishment, contrary to the provisions of the 8th Amendment to the United States Constitution, and their continued threats to the child of nearly two years duration, keep her from having the liberty to enjoy a normal childhood, with a permanent, stable, healthy environment {pursuit of happiness}, in violation of the 14th Amendment of the United States Constitution.

(See Cause of Action, at 10–11.)

Aside the request for $500,000 in damages for alleged harassment, the thrust of the complaint and its requests for relief address matters which should be resolved in the state actions.[18] In determining the custody and welfare of the minor plaintiff, the state court can also readily determine if her constitutional rights are being adequately protected in the course of its proceedings. It can address and remedy any of the alleged violations.

Viewing the *pro se* complaint liberally, plaintiff appears to allege financial and emotional harassment against defendant SRS and harassment in a general sense against defendants Owens, Fletcher, and Ronald Oltremari, Sr. for their part in an alleged conspiracy to discriminatorily deny constitutional and other legal rights to plaintiff because of her gender. (See Civil Compl., ¶¶ II, VI; Cause of Action, at 1–8.) She alleges that in criminal proceedings against her mother Susan McDaniel, SRS "demanded the child" in order to gain an advantage in a civil action. (See Cause of Action, at 5.) Plaintiff further avers that SRS "harassed and repressed the child and at one point forced the child, who was sobbing to see her mother, into a secluded room to force her to 'cooperate.'" She states that "[d]uring this period, [her] every communication was monitored and she was unable to contact friends and family of her choice. A State Senator and a State Representative were not allowed a private conversation with [her]. In effect, [she] was literally kidnapped by SRS and imprisoned for their gain." (See Cause of Action, at 6.) She further alleges that defendants Owens and Fletcher conspired to cover her dysfunctional handling and to influence a state judge in violation of state law. (See Cause of Action, at 2.) She complains that Owens and Fletcher deliberately delayed informing her mother of court hearings until the day of the hearings and that Owens in conjunction with SRS would threaten plaintiff with foster care. (See Cause of Action, at 6.) Plaintiff alleges gender discrimination. (See Cause of Action, at 6–8.) She avers, moreover, that Owens allowed her to be harassed by custody battles and his recommendation of SRS custody of her. (See Cause of Action, at 7.) Plaintiff apparently contends the harassment constitutes the following: a denial of due process and violation of other constitutional rights (see Civil Compl., ¶ II; Cause of Action, at 11); a failure and refusal to take appropriate action to assure "fair hearings and the recognition, protection, and enforcement of her constitutional and other legal rights" as re-

---

18. Had plaintiff only asked the court to decide the question of damages, it could not do so without considering and analyzing the basis for determining her ultimate custody and best inter-

ests. "Such action this Court is not equipped nor is it prepared to undertake." *Neustein,* 732 F.Supp. at 339.

quired by Florida and Kansas statutes (Cause of Action, at 1).

That the three criteria of *Younger* are fulfilled does not necessarily mean the court should abstain. The doctrine "is not without its exceptions." *Phelps I,* 828 F.Supp. at 842.

> *Younger* and its civil counterpart ... do of course allow intervention in those cases where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is " 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' "

*Huffman,* 420 U.S. at 611, 95 S.Ct. at 1211. Another exception "permits federal intervention where the case involves such extraordinary circumstances that the plaintiff will suffer irreparable injury even though the state action was brought in good faith. The case must be extraordinary in the sense of creating an extraordinary pressing need for immediate relief." *P. Edward A. by and through Nolan v. Williams,* 696 F.Supp. 1432, 1438 (D.Utah 1988) (citing *Moore,* 442 U.S. at 432–33, 99 S.Ct. at 2382–83).

"Though the courts have grappled with these exceptions on several occasions, they have eluded any distinct or precise formulations." *Phelps II,* 840 F.Supp. at 1451. "However, it has been clear, from the very beginning, that the exceptions provide a very narrow gate for federal intervention." *Arkebauer v. Kiley,* 985 F.2d 1351, 1358 (7th Cir.1993). As one noted commentator has summarized:

> There is no case since Younger was decided in which the [Supreme] Court has found that the exception for bad faith or harassment was applicable. In two cases [ (*Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) and *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977)) ] the Court has specifically held that the exception did not apply.
>
> The more generalized exception for "extraordinary circumstances" has fared only slightly better....
>
> ...
>
> Litigants who have sought to bring themselves within the exceptions to Younger have had almost as little success in the lower courts. In the words of one commentator, "[a]s a practical matter * * * the universe of bad-faith harassment claims that can be established is virtually empty." In a very few cases a claim of bad faith or harassment has been accepted while there are ... many cases in which it has been rejected. The few cases finding that the "extraordinary circumstances" exception applied are also set out along with some in which that exception was held not applicable. These lower court decisions, either way, are presented without any warranty of their correctness, since lower court decisions have been poor harbingers of what the Supreme Court will do in its continuous refashioning of "Our Federalism." Nevertheless, on the basis of what the Supreme Court has done in the few cases in which it has considered the exceptions, the lower court decisions finding no exception applicable seem likely to be more reliable as precedent than those that have come out the other way.

17A Wright & Miller, *supra* § 4255 (footnotes omitted).

Plaintiff has alleged that she has been financially and emotionally harassed in the context of the dispute over her custody. (Civil Compl., at ¶ II.) She seeks $500,000 as damages for this harassment. (Civil Compl., at ¶ VI.) Although the court may reasonably construe the complaint to imply bad faith in a general sense, plaintiff does not specifically allege that either state proceeding is or was commenced, conducted, or motivated by bad faith or for purposes of harassment. (See generally, Civil Compl. and attached Cause of Action.) The bad faith or harassment exception "may not be utilized unless it is alleged and proved" that the state court proceedings were commenced or conducted "in bad faith or motivated by a desire to harass." *Juidice,* 430 U.S. at 338, 97 S.Ct. at 1219. This is a "heavy burden" for a party to meet. *Dolack v. Allenbrand,* 548 F.2d 891, 894 (10th Cir.1977) (discussing *Younger* exceptions).

Plaintiff has not carried that burden. Although she has alleged that certain defendants harassed her or otherwise acted in bad faith, the record reveals nothing of substance to indicate that the state court proceedings were commenced or conducted in bad faith or with a harassing motive. The mother of plaintiff initiated the divorce action in state court, not the defendants. The State of Kansas brought the child in need of care action, not the defendants. The record reflects a reasonable basis for the action. The state apparently sought only to protect a child who allegedly had been physically, mentally, or emotionally abused or neglected while in the care and control of her father. It further sought to protect the child from allegedly improper influence or coaching from her mother. Allegations existed that Ms. McDaniel influenced or coached plaintiff to make statements concerning abuse to the authorities. (See Petition filed Aug. 28, 1992 in the District Court of Johnson County, Kansas, entitled In the Interest of Lynn Christine Oltremari, Case No. 92JC1481, contained in Transcript of Proceedings, doc. 34.) Despite the allegations by plaintiff of bad faith and harassment, an action to determine the best interests of the child appears appropriate in such circumstances. The record does not show that either of the two actions in state court have been commenced in bad faith or for purposes of harassment.

Although the complaint alleges wrongdoing by defendants, its allegations fail to show that the state actions were conducted in bad faith. The court could infer bad faith in conducting the state actions only from the conclusions stated in the complaint. Conclusory assertions do not suffice as allegations that defendants acted in a manner contrary to legitimate, statutory procedures for litigating a child custody dispute. Plaintiff may feel harassed by the child in need of care proceeding and other actions to determine her own best interests, but such actions do not show that the state proceedings were conducted in bad faith or for an improper motive.

Allegations of harassment and innuendoes of bad faith do not suffice to carry the burden which plaintiff has to transfer this litigation from state to federal court. She "must allege specific facts to support an inference of bad faith. 'The *Younger* rule … requires more than a mere allegation and more than a "conclusory" finding to bring a case within the harassment exception.'" *Arkebauer,* 985 F.2d at 1359 (discussing the bad faith and harassment exceptions in the context of criminal prosecution) (citations omitted). In a criminal context, bad faith under *Younger,* "'generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction.'" *Phelps I,* 828 F.Supp. at 843 (quoting *Kugler v. Helfant,* 421 U.S. 117, 126 n. 6, 95 S.Ct. 1524, 1531 n. 6, 44 L.Ed.2d 15 (1975)). By analogy, bad faith, in a civil context, would generally mean that an action has been brought without a reasonable expectation of obtaining a judgment.

> Bad faith is truly a case-by-case determination. From reading the different decisions, one can see that the courts have rejected making the exception available upon proof of one inconclusive circumstance. Evidence of bad-faith harassment must be more than multiple prosecutions, must be more than conclusory statements about motive, must be more than a weak claim of selective prosecution, and must be more than the prosecution of close cases.

*Phelps II,* 840 F.Supp. at 1453 (citations omitted). From the record before it the court should not find the bad faith and harassment exceptions to *Younger* abstention applicable here.

Plaintiff has also failed to show that the state actions involve such extraordinary circumstances that she will suffer irreparable injury. She has not demonstrated a pressing need for immediate relief. The extraordinary circumstances envisioned in *Younger* do not appear here. Plaintiff may in state court seek relief from the alleged constitutional violations by defendants. She has shown no inability to obtain remedial relief in the state court. Nor has she shown that the state court has denied her any appropriate relief as to any defendant here. If plaintiff receives an adverse decision, she may avail herself of the state appellate process. "[U]ltimate recourse to federal court from an

adverse state court decision is not cut off," because plaintiff will have a right of appeal to the United States Supreme Court, pursuant to 28 U.S.C. § 1257. *Swayne v. L.D.S. Social Servs.,* 670 F.Supp. 1537, 1548 & n. 20 (D.Utah 1987).

This court may abstain from jurisdiction when "there is no indication that the state court proceedings ... are being conducted in bad faith or that the challenged determinations regarding custody, visitation, and parental rights are patently unconstitutional, or that other extraordinary circumstances exist which pose great, immediate, and irreparable harm to plaintiff[ ]." *See Thomas,* 814 F.Supp. at 1150. "There is a well-established policy that federal courts should abstain from exercising jurisdiction in domestic relations cases. Issues of domestic relations are within the province of state courts rather than the federal courts." *Daniels v. Stovall,* 660 F.Supp. 301, 304 (S.D.Tex.1987). When a plaintiff's claims against certain defendants

> are so enmeshed in her domestic relations controversy, which is properly within the province of the state court ... the exercise of the federal district court's jurisdiction [is] improper.... [A] litigant may not circumvent the domestic relations exception and seek federal resolution of a state court domestic matter by filing a complaint in the lower federal courts "cast in the form of civil rights suits."

*Id.* When constitutional claims appear to arise out of a domestic relations dispute, the court should dismiss the action "as an abortive attempt to involve the federal courts in a domestic relations matter best left to the states." *Martin v. Chiles,* 763 F.Supp. 1133, 1136 (S.D.Fla.1991) (finding dismissal proper under both the domestic relations exception and the *Younger* doctrine), *aff'd,* 4 F.3d 999 (11th Cir.1993).

*Younger* abstention has extended to pending child custody proceedings. *Id.* "[F]ederal district courts may not interfere with ongoing child custody proceedings." *Id.*

> Equitable considerations favor the resolution of the federal question and any resulting state law questions in a single proceeding. That can only be accomplished in the state court since the federal court could not modify the state court decrees. Duplicative and piecemeal litigation, and the resulting potential for inconsistent state and federal decrees, are avoided and judicial economy is served by allowing these issues to be resolved in state court.

*Fern,* 736 F.2d at 1370. Defendant SRS appropriately suggests that this court should abstain from exercising jurisdiction over this case.

In conjunction with or instead of abstaining from the claims within the supplemental jurisdiction of this court, the court should also decline to exercise such jurisdiction under 28 U.S.C. § 1367(c)(1) or (2). Those subdivisions permit the court in its discretion to decline to exercise supplemental jurisdiction over a claim, if "(1) the claim raises a novel or complex issue of State law, [or] (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." These two reasons for declining supplemental jurisdiction "overlap the so-called caselaw-based 'abstention' doctrines." 28 U.S.C. § 1367 Practice Commentary, at 834 (1993). Such declination "should be applied in a manner compatible with [abstention]. The abstention doctrines are not lightly invoked by the federal judges, and it is hoped that the setting forth of these analogous if not overlapping or duplicative bases in § 1367(c) will not encourage any looser application of them." *Id.* at 835. The rationale for abstention here applies equally to declining supplemental jurisdiction over the claims not within the original jurisdiction of this court.

Were the court to exercise jurisdiction it should nevertheless dismiss the complaint for the following reasons: "[U]nder Fed.R.Civ.P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next of friend if the parent is not represented by an attorney." *Meeker v. Kercher,* 782 F.2d 153, 154 (10th Cir.1986). The court should raise this issue *sua sponte. Osei–Afriyie v. Medical College,* 937 F.2d 876, 883 (3d Cir.1991). In this court Susan McDaniel as a non-lawyer may not represent Lynn Oltremari without an attorney. *Id.* "The right to counsel belongs to the child[ ] ... the parent cannot waive this right." *Id.*

"[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." The choice to appear *pro se* is not a true choice for minors who under state law, *see* Fed. R.Civ.P. 17(b), cannot determine their own legal actions. There is thus no individual choice to proceed *pro se* for courts to respect, and the sole policy at stake concerns the exclusion of non-licensed persons to appear as attorneys on behalf of others.

It goes without saying that it is not in the interests of minors and incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected. There is nothing in the guardian-minor relationship that suggests that the minor's interests would be furthered by representation by the non-attorney guardian.

*Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir.1990).

For the foregoing reasons the Magistrate Judge submits the following recommendations to the District Judge: The court should overrule the Motion For Dismissal of 92JC1481 (doc. 4), the Motion For Restraining Order (doc. 5), and the Motion For Removal of C111627/92JC1481 From The District Court of Johnson County, Kansas (doc. 6). It should deem the Motion To Oppose Dismissal (doc. 31) to be a response by plaintiff to the defense motions and decline to make a separate ruling upon it. It should otherwise abstain from this case under *Younger* and 28 U.S.C. § 1367(c)(1) or (2). Accordingly, it should sustain the motions to dismiss (docs. 17, 19 through 23, and 27). Should the court retain jurisdiction, however, it should nevertheless sustain the following motions on their merits: the Motion To Dismiss By Defendant Johnson County District Attorney's Office (doc. 27); the Special Appearance and Motion To Dismiss Challenging Jurisdiction, Sufficiency of Process, and Sufficiency of Service of Process of defendant Colin Oltremari (doc. 21); Special Appearance and Motion To Dismiss Challenging Jurisdiction, Sufficiency of Process, and Sufficiency of Service of Process of Ronald Ol-

tremari, Jr. (doc. 22). It should overrule the other motions to dismiss on their merits (docs. 17, 19, 20, and 23). Additionally it should *sua sponte* dismiss the complaint without prejudice for the reasons herein stated.

Respectfully submitted.

Dated in Kansas City, Kansas on this 26th day of October, 1994.