Karen A. VAUGHAN; and Zachary Ryan Vaughan, a minor child aged two years, by Karen A. Vaughan, his natural mother and next friend, Plaintiffs–Appellees,

v.

Randy SMITHSON, Defendant–Appellant,

and

Gene Smithson; and Sandra Smithson, Defendants.

No. 87–1810.

United States Court of Appeals, Tenth Circuit.

Submitted on the Briefs.[1]
Decided Aug. 21, 1989.

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.

Glenn D. Young, Jr. and Paul S. McCausland of Gott, Young & Bogle, P.A., Wichita, Kan., for defendant-appellant.

Fred W. Phelps, Jr. and John R. Balhuizen of Phelps–Chartered, Topeka, Kan., for plaintiffs-appellees.

Before MOORE, BALDOCK and BRORBY, Circuit Judges.

PER CURIAM.

This action arises out of a nonmarital relationship between Karen A. Vaughan (plaintiff) and Randy Smithson (defendant), which resulted in the birth of a child. The

App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

**2.** Plaintiff did not file a cross appeal to challenge the rejection of her other claims for relief. Therefore, our review is limited to considering only the judgment entered against defendant for

complaint alleged jurisdiction under 28 U.S.C. § 1332 and charged defendant with, among other things, breach of a voluntary contract to provide the child with material and financial support. Following a trial, a jury returned a verdict against defendant finding him liable on the contract claim. Defendant then filed a motion for judgment notwithstanding the verdict, which was denied, and this appeal followed.

Based on our review of the record on appeal and the parties' appellate briefs, we believe the decisive issue is whether the claim for breach of contract falls within the judicially carved domestic relations exception to the diversity jurisdiction.[2] This doctrine originated in the dicta of two early Supreme Court cases. *See Ex parte Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 852–53, 34 L.Ed. 500 (1890) ("[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States"); *Barber v. Barber,* 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1858) ("[w]e disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony"). It is now well established that federal courts do not have diversity jurisdiction to grant a divorce or annulment, determine support payments, or award custody of a child. *Gonzalez Canevero v. Rexach,* 793 F.2d 417, 418 (1st Cir.1986); *Bennett v. Bennett,* 682 F.2d 1039, 1042 (D.C.Cir.1982); *Csibi v. Fustos,* 670 F.2d 134, 137 (9th Cir.1982); *Sutter v. Pitts,* 639 F.2d 842, 843 (1st Cir.1981); *Cole v. Cole,* 633 F.2d 1083, 1087–89 (4th Cir. 1980); *Solomon v. Solomon,* 516 F.2d 1018, 1021–26 (3d Cir.1975).[3]

breach of contract. *See Zelinger v. Uvalde Rock Asphalt Co.,* 316 F.2d 47, 53–54 (10th Cir.1963).

**3.** Since this case is based only on federal diversity jurisdiction, we have no occasion to determine the applicability of the domestic relations exception in the context of any other source of federal jurisdiction. *See Ingram v. Hayes,* 866

The contemporary rationale for the domestic relations exception is premised on policy considerations. Courts have reasoned that: (1) the states have a strong interest in domestic relations matters and have developed an expertise in settling family disputes; (2) such disputes often require ongoing supervision, a task for which the federal courts are not suited; (3) federal adjudication of such disputes increases the chances of incompatible or duplicative federal and state court decrees; and (4) such cases serve no particular federal interest, while they crowd the federal court docket. *Rykers v. Alford*, 832 F.2d 895, 899–900 (5th Cir.1987); *Ruffalo v. Civiletti*, 702 F.2d 710, 717 (8th Cir.1983).

In this case defendant has argued in support of his motion for judgment notwithstanding the verdict and, on appeal, that the domestic relations exception reaches the contract claim because the relief sought and awarded by the jury for breach of the contract was, in essence, child support, which is one of the traditional domestic relations remedies fashioned in state court systems. Plaintiff's position, agreed with by the district court, is that her contract claim is unrelated to domestic relations issues because she did not overtly seek a distinctive domestic relations remedy provided by state courts but only sought to enforce contract rights given to her by defendant. According to plaintiff, the relief awarded by the jury for breach of the contract is independent of any traditional domestic relations remedy, such as enforcement of a parent's statutory duty to provide support for a child born out of wedlock, which is available in state court.

The weakness in plaintiff's argument is that it focuses only on how her claim was phrased. Stating a claim in terms of contract or tort does not determine whether it falls outside the domestic relations exception. The proper inquiry focuses on the type of determination the federal court must make in order to resolve the claim. If the federal court is called upon to decide those issues regularly decided in state

court domestic relations actions such as divorce, alimony, child custody, or the support obligations of a spouse or parent, then the domestic relations exception is applicable. *Compare Rykers*, 832 F.2d at 899–900 (domestic relations exception bars husband's tort claims against his alleged common law wife arising out of his arrest for allegedly kidnapping the couple's child because the claims required determination of the husband and wife's respective rights to custody of the child) *and Bennett*, 682 F.2d at 1042–44 (domestic relations exception precludes granting injunction setting future custody and visitation rights in tort action brought by father against former wife for allegedly kidnapping their child) *with McIntyre v. McIntyre*, 771 F.2d 1316, 1318 (9th Cir.1985) (domestic relations exception does not apply to claim alleging past breach of visitation rights granted by state court because claim did not require determination of spousal or parental status) *and Cole*, 633 F.2d at 1087–89 (domestic relations exception did not bar husband's tort claims against former wife for arson, conversion, and malicious prosecution because determination of case would not require the court to adjust family status or establish duties).

Under this analysis, plaintiff's claim, while framed in the terms of contract, is nevertheless barred by the domestic relations exception. Resolution of the claim required the district court to consider evidence of the personal needs and finances of a child and make a subjective and equitable decision on the level of support a father was required to furnish his child. This is the same type of determination made in state court domestic relations actions. State courts, with their relative expertness in domestic relations matters, are better suited for this task. Furthermore, plaintiff's contract claim raises the issue of whether or not any traditional domestic relations remedy available in state court, such as enforcement of a statutory duty to provide support for a child, is implicitly relinquished by plaintiff or otherwise affected. In order to avoid the risk of incom-

F.2d 368, 370–72 (11th Cir.1988) (discussing the varying approaches taken by other circuits to determine whether the domestic relations excep-

tion applies to cases brought under the federal question statute).

patible state and federal court decrees and the piecemeal handling of what is substantially a single controversy, plaintiff should pursue both the contract claim and any other domestic relations remedy in a state court system.

Plaintiff's reliance on cases which have found the domestic relations exception inapplicable to diversity actions based on breach of a voluntary separation agreement entered into years after the parties had divorced, *see Crouch v. Crouch*, 566 F.2d 486 (5th Cir.1978), and breach of property and separation agreements incorporated in divorce decrees is misplaced. *See Turpin v. Turpin*, 415 F.Supp. 12 (W.D. Okla.1975); *Richie v. Richie*, 186 F.Supp. 592 (E.D.N.Y.1960). In these cases the federal courts were only called upon to enforce liquidated obligations after a state court had entered a divorce decree. The federal courts were not required, as in this case, to determine in the first instance issues regularly decided in state court domestic relations actions. Furthermore, there was no potential for inconsistent state and federal decrees. Thus, none of the rationales for the domestic relations exception were implicated.

Accordingly, the district court's judgment entered following the jury verdict is VACATED and the cause REMANDED with directions to dismiss for lack of subject matter jurisdiction.