F I L E D
United States Court of Appeals
Tenth Circuit

AUG 27 1997

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DEBORAH LYNN WIGINGTON,

 Plaintiff-Appellant,

v.

PATRICK MICHAEL McCARTHY,

 Defendant-Appellee.

No. 96-7134
(D.C. No. CV-96-384)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY, EBEL** and **KELLY**, Circuit Judges.

 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

 [*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Appellant Deborah Wigington appeals the United States District Court of the Eastern District of Oklahoma's dismissal of her complaint for lack of jurisdiction. We affirm.

## I.

This action arises out of the ongoing dispute between Ms. Wigington and her former husband, Patrick McCarthy, surrounding custody of their son, Michael McCarthy. The parties in this case were divorced in Texas in 1994 after an eight-day jury trial. The jury determined the parents would be "Joint Managing Conservators," but gave Mr. McCarthy "primary possession" of Michael along with the exclusive right to determine Michael's residence and domicile. During Ms. Wigington's 1995 summer visitation with Michael in Oklahoma, rather than returning Michael to Mr. McCarthy as Texas court ordered, Ms. Wigington retained Michael and filed an application for custody in Oklahoma's Bryan County District Court. Mr. McCarthy filed for an order of contempt in Texas, and the Texas court issued a contempt order and a warrant for Ms. Wigington's arrest. In February 1996, Oklahoma's Bryan County District Court awarded custody to Ms. Wigington and gave Mr. McCarthy visitation. In July 1996, Mr. McCarthy took Michael to Texas and obtained an order there granting him sole custody of Michael. Mr. McCarthy also appealed the custody decision reached in

Oklahoma's Bryan County District Court to the Oklahoma Court of Appeals.

Attempting to invoke the federal district court's diversity jurisdiction pursuant to 28 U.S.C. § 1332 (1994), Ms. Wigington brought this action alleging Mr. McCarthy illegally removed Michael from Oklahoma and took him to Texas in violation of Okla. Stat. Ann. tit. 43, § 111.2 (West 1990 & Supp. 1997). Ms. Wigington sought, *inter alia*, the following relief: damages in excess of $50,000; a declaratory judgment establishing Oklahoma as the proper jurisdictional forum for the custody dispute; equitable relief in the form of a district court order mandating Michael's return to Oklahoma; and an order stating the Oklahoma custody decision was entitled to full faith and credit in Texas. Mr. McCarthy filed a motion to dismiss the complaint for lack of jurisdiction. The district court granted the motion and dismissed the complaint for lack of jurisdiction.

On appeal, Ms. Wigington argues the district court erred in dismissing for lack of jurisdiction for two reasons: 1) because her complaint does not seek a child custody order but instead sounds in tort, the district court erred in applying the domestic relations exception to diversity jurisdiction; and 2) the district court erred in refusing to consider "the validity of the stalemated custody decisions of the States of Oklahoma and Texas."

## II.

While not specifically stated in the motion to dismiss or in the district court's order, dismissal of a complaint for lack of jurisdiction is proper pursuant to Fed. R. Civ. P. 12(b)(1); we assume it was pursuant to this rule the district court dismissed the complaint. Fed. R. Civ. P. 12(b)(1). We review an order granting a motion to dismiss for lack of subject matter jurisdiction *de novo*. *Painter v. Shalala*, 97 F.3d 1351, 1355 (10th Cir. 1996).

While Ms. Wigington properly alleged the requirements for diversity jurisdiction under the version of 28 U.S.C. § 1332(a) in effect at the time she filed her complaint,[1] the mere presence of such allegations does not end our analysis. The federal courts have judicially carved out a "domestic relations" exception to diversity jurisdiction, an exception which originated from early Supreme Court law. *Vaughan v. Smithson*, 883 F.2d 63, 64 (10th Cir. 1989); *see also Ex Parte Burrus*, 136 U.S. 586, 593-94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."); *Barber v. Barber*, 62 U.S. (21 How.) 582, 584 (1858) ("We disclaim altogether any jurisdiction in the courts

---

[1] 28 U.S.C. § 1332(a) (1994) has since been amended such that to invoke diversity jurisdiction, a plaintiff must allege the amount in controversy equals at least $75,000. 28 U.S.C.A. § 1332(a) (West Supp. 1997).

of the United States upon the subject of divorce, or for the allowance of alimony."). More recently, the Supreme Court reaffirmed the propriety of the domestic relations exception holding the exception exists as a matter of statutory construction; Congress "'adopt[ed] that interpretation' when it reenacted the diversity statute [in 1948]." *Ankenbrandt v. Richards*, 504 U.S. 689, 701 (1992) (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)).

The domestic relations exception to diversity jurisdiction is based on several policy considerations: the states have a strong interest in domestic relations matters; the states have developed an expertise in settling domestic disputes; such disputes require ongoing supervision, a task better suited to the states; federal determination of domestic disputes increases the chances for conflict between federal and state court decisions; domestic cases would crowd the federal docket while serving no particular federal interest. *Ankenbrandt*, 504 U.S. at 703-04; *Vaughan*, 883 F.2d at 65. Consequently, federal courts do not have diversity jurisdiction over divorce and alimony decrees and child custody orders. *Ankenbrandt*, 504 U.S. at 703; *Vaughan*, 883 F.2d at 64.

Ms. Wigington argues the domestic relations exception to federal diversity jurisdiction does not apply in this case because she is not seeking an order for

child custody, but is instead only requesting the federal courts to determine whether Mr. McCarthy "committed a tort when he abducted [Ms. Wigington's] son." We disagree. While it is true the Court has narrowly construed the domestic relations exception as encompassing "only cases involving the issuance of a divorce, alimony, or child custody decree," even assuming the Oklahoma statute under which Ms. Wigington brings her claim applies to Mr. McCarthy,[2] this dispute cannot be so easily characterized as a claim sounding in tort. *Ankenbrandt*, 504 U.S. at 704. To determine whether Mr. McCarthy has engaged in illegal "child stealing" under Okla. Stat. Ann. tit. 43 § 111.2 would necessarily require the district court to make determinations regarding conflicting custody decrees and the parties' respective custody and visitation rights. These are the type of questions the federal courts are singularly unqualified to answer. Further, Ms. Wigington does not only seek damages, but also seeks an order demanding Michael's return to her custody. Notwithstanding Ms. Wigington's attempt to

---

[2] We are doubtful whether this statute would apply to Mr. McCarthy due to his status as "a party to a child custody proceeding." Okla. Stat. Ann. tit. 43 § 111.2 reads in pertinent part:

> Any person who is not a party to a child custody proceeding, and who intentionally removes, causes the removal of, assists in the removal of, or detains any child under eighteen (18) years of age with intent to deny another person's right to custody of the child or visitation under an existing court order shall be liable in an action at law.

characterize her claim as one sounding in tort, the reality remains she is asking the federal courts to determine her and Mr. McCarthy's respective custody rights regarding Michael. We refuse to open the back door of the federal courts to issues of child custody -- issues that are better left to the state courts' expertise.

## III.

Ms. Wigington also argues the district court should have issued an order declaring which state's custody order is proper. In her complaint, Ms. Wigington sought a declaratory judgment establishing Oklahoma as the forum with jurisdiction over the custody dispute and an order mandating that Texas give Oklahoma's custody decision full faith and credit. Relying on *Thompson v. Thompson*, 484 U.S. 174, 175 (1988), the district court held it did not have jurisdiction to issue such an order.

In *Thompson*, the Supreme court held the Parental Kidnaping Prevention Act of 1980, 28 U.S.C. § 1738A (1994), did not furnish a "cause of action in federal court to determine which of two conflicting state custody decrees is valid." *Thompson*, 484 U.S. at 187. On appeal, Ms. Wigington argues the Supreme Court left the door of jurisdiction in the federal courts ajar by stating: "ultimate review remains available in this Court for truly intractable jurisdictional

deadlocks." *Id.* Ms. Wigington argues because the present dispute falls within that category, federal jurisdiction exists in this case. Ms. Wigington's argument fails for two reasons.

First, it is clear from the context of the quoted language the Court was referring to jurisdiction available in the Supreme Court pursuant to 28 U.S.C. § 1257(a) (1994), which gives the Court jurisdiction over "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had." *Thompson*, 484 U.S. at 187. Nothing in *Thompson* suggests the Supreme Court was attempting to create a loophole in its general statement the Parental Kidnaping Prevention Act did not create a cause of action in federal court to resolve conflicting state child custody orders. *Id.*

Second, we are no longer faced with a "truly intractable jurisdictional deadlock[]." *Id.* Between the time Ms. Wigington filed her brief before this court and Mr. McCarthy filed his, the Oklahoma Court of Appeals held the Bryan County District Court exercised jurisdiction over the issue of Michael's custody in violation of the Uniform Child Custody Jurisdiction Act and the Parental Kidnaping Prevention Act. Okla. Stat. tit. 43 §§ 501-527 (1991); 28 U.S.C. § 1738A (1994). Also, the Supreme Court of Oklahoma has since denied Ms.

Wigington's petition for certiorari. Consequently, the "deadlock" has been resolved, and any exception that may exist to *Thompson*'s general rule does not apply in this case.

For the foregoing reasons, we **AFFIRM** the district court's dismissal for lack of jurisdiction.

**Entered for the Court**

**WADE BRORBY**
United States Circuit Judge